ROGERS v. SAGINAW-BAY CITY RAILWAY CO.

1. EVIDENCE—RES GESTÆ—HEARSAY—EXCEPTIONS TO RULE.

It is a general rule established by consensus of authority that the conditions necessary to permit in evidence statements in regard to a past occurrence, made by one who participated therein, are: *first*, that there is a startling occasion, startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting; *second*, that the statement must have been made before there had been time to contrive and misrepresent; and, *third*, the statement must relate to the circumstances of the occurrence preceding it.[1]

2. SAME.

Where the only evidence of the manner in which the decedent was injured was the testimony of his son that decedent informed him that defendant's motorman started the street car on which he had been riding before decedent had

[1] As to relative time of transaction and declarations to constitute them part of the *res gestæ*, see note in 19 L. R. A. 733, and as to statements made by injured party, see note in 42 L. R. A. (N. S.) 952.

removed his foot from the step and while he was standing
with one foot on the ground, and no testimony was offered
to show that the accident had occurred immediately pre-
vious, and there was lack of proof whether plaintiff's
decedent had or had not lost control of his faculties, the
trial court was correct in holding the evidence incompetent
and in directing a verdict for the defendant.

Error to Bay; Collins, J.  Submitted June 22, 1915.
(Docket No. 89.)   Decided July 23, 1915.

Case by Evelyn H. Rogers, as administratrix of the
estate of John Rogers, deceased, for the unlawful kill-
ing of plaintiff's intestate.  Judgment for defendant
on a verdict directed by the court.  Plaintiff brings
error.  Affirmed.

*De Foe, Hall & Converse,* for appellant.

*Weadock & Duffy,* for appellee.

KUHN, J.  This action is brought by the plaintiff, as
administratrix of the estate of John Rogers, deceased,
against the defendant, to recover damages for injuries
to the said John Rogers, which it is claimed resulted
in his death; said injuries being alleged to have been
caused by the negligent acts of the defendant com-
pany.  On July 31, 1912, John Rogers, the deceased,
was employed in the city of Saginaw on the west side,
and his home was on the east side of said city, at the
intersection of Washington and Carroll streets, which
is a distance of about two miles from the place of his
employment.  On this day he returned from his work
between 5:30 and 6 o'clock in the afternoon.  His
home was situated at the southwest corner of the inter-
section of Washington street and Carroll street, where
there is a double track of the defendant street car com-
pany on Washington street, and the car coming from
the west side of the city passed north over Washington
street on the east track.

The only evidence introduced in support of the plaintiff's case was that of Reuben Rogers, a son of John Rogers, who testified that on the afternoon of the day in question he came out of the house between 5:30 and 6 o'clock, and saw his father coming from the northeast toward the southwest from Carroll street, which distance was measured to be about 150 feet, and the son estimated it would take about 25 seconds to walk that distance at the rate of speed his father was walking. The deceased was limping and his face was drawn. At the same time the son noticed a car probably half a dozen car lengths from the corner of these two streets. He said to his father: "What is the matter, dad?" The latter replied: "That fellow started the car as I was getting off and jarred my hip." The son thereupon assisted his father up to the porch of the house, where he seated himself in a chair. The son testified that while his father was sitting there he noticed twitching of the face, and testified further as follows:

"*Q.* Did this conversation that started while he was on the walk continue as he came up onto the porch?
"*A.* Yes, sir.
"*Q.* State whether or not in that same conversation, as he approached and came up onto the porch, your father said anything further to you about his leaving the street car. You can answer that 'yes' or 'no' as to whether he stated anything further than you have said to us.
"*A.* Yes; he did.
"*Q.* Tell us, in his own language as near as you can remember, what else he said on the subject at that time?
"*Mr. Weadock:* Under the objection, your Honor.
"*The Court:* Yes; it will be under your objection and exception.
"*A.* He said that while he was in the act of alighting from the car one foot was on the running board and the other foot was nearly on the ground, and the car

started and threw him to the pavement on his right
hip."

Mr. Rogers lived about four months after this in-
jury.  There was no proof of negligence on the part
of the company other than that given by the son Reuben
Rogers, and no witnesses were produced who saw the
accident, if any there were, or who had any knowledge
of what occurred when Mr. Rogers was leaving the
car, assuming that he did leave the car.  At the
close of the proofs the trial judge directed a ver-
dict for the defendant, on the ground that the
testimony of the witness Reuben Rogers as to the state-
ments made by his father was not admissible, because,
under the circumstances of this case, they were not
brought within the exception to the hearsay rule.  The
question of the admissibility of this evidence was also
subsequently raised on a motion for a new trial, which
motion was denied.  Counsel say that the only ques-
tions for our consideration are whether or not the tes-
timony of Reuben Rogers is competent for the purpose
of proving negligence on the part of the street railway
company, or, in other words, proper as *res gestæ;* and,
*second,* if competent, Was there a question to be pre-
sented to the jury?

That the statement of decedent to his son—the only
evidence in the case—is hearsay evidence of the fact
asserted, is, from its very nature, indisputable.  The
only question we must decide is whether the trial judge
was right in saying that it did not come within any
exception to the rule excluding hearsay evidence as
incompetent.  It is the contention of the plaintiff that
it does come within that exception which permits un-
sworn statements that are spontaneous exclamations to
be received.  But what is the basis of that exception,
and what the nature of those statements?  The excep-
tion is based upon the fact that such exclamations, by
virtue of their origin, have a peculiar trustworthiness.

It is well established by the authorities that the only conditions upon which such statements will be allowed in evidence are (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it.  3 Wigmore on Evidence, § 1750 *et seq.*

But how can the second condition be met without direct and independent evidence of the time of the startling occasion with reference to the making of the statement?  For aught that appears beyond the statement itself, the injury may have occurred three or four hours before the statement was made, and it does not appear that plaintiff's decedent had lost at any time control of his faculties.  In such an event, the element of spontaneousness is absent.  And it is for the proponent to discharge the burden of proving spontaneousness, or the statement is rejected as hearsay.  16 Cyc. p. 1250.  Had the plaintiff presented witnesses who could swear that they saw the decedent on the street car in a normal physical condition, unhurt, shortly before the injury, it might with reason be claimed that then the condition of admissibility would have been met and the spontaneousness of the statement established.  Manifestly, the decedent's statement cannot be used for this purpose, because it has not yet been admitted.  But, since the unsworn statement of John Rogers has not been proved to be a spontaneous exclamation, it is not within this exception to the hearsay rule.  Not being within any other exception, it is objectionable and inadmissible as hearsay evidence. See *White* v. *City of Marquette,* 140 Mich. 310, 314 (103 N. W. 698), and *Bernard* v. *Paper Box Co.,* 170 Mich. 238, 242 (136 N. W. 374, 42 L. R. A. [N. S.]

930), in which cases the element of spontaneousness was found wanting, though in both the time of the event was established. The question of the failure of proof as to the time of the happening of the event independent of the statement was considered in the well-reasoned case of *State* v. *Williams,* 108 La. 222 (32 South. 402), where it was said:

"Noble showed the time the statements were made with reference to the pulling out of the train, but the time at which Hebert was shot, with reference to that same fact, remained still to be ascertained in order to furnish the data upon which was to be tested the *admissibility* of the statements as *res gestæ.* * * * Proof that Hebert's declarations were made simultaneously, or almost so, with the departure of the freight train, would still leave open for ascertainment the time those statements were made, with reference to that at which he was shot. The facts by and from which the admissibility of the statements as *res gestæ* are to be tested have to be 'testified' to by persons cognizant of them. The admissibility itself of the statements being the very question at issue for decision, no part of them are to be used for the purpose of determining it. Counsel very correctly say: 'There being no foundation for the admission of the declaration, it was used as its own foundation and was itself the basis on which it was admitted.'"

We think the case of *Gilbert* v. *Railroad Co.,* 161 Mich. 73 (125 N. W. 745), is clearly distinguishable from the case now before us. In that case the testimony of the fireman of the engine was that he saw the brakeman lying on the rails at a distance from certain scales, where marks appeared in the snow, commencing at the scales and stopping where plaintiff's decedent lay, indicating that plaintiff's decedent had been dragged. The yardmaster testified that it showed where plaintiff's decedent had been dragged, and that it showed the hole in the scale in which plaintiff's decedent said he had caught his foot. These witnesses reached the decedent immedi-

ately after the injury, the time of which was established, and carried him about 400 feet to the depot, where the declarations as to the occurrence were made. In this case we find the corroborative evidence of eyewitnesses and the evidence of the physical surroundings further elucidated by the dying declaration of the plaintiff's decedent. Under these circumstances these declarations were properly received as not objectionable under the hearsay rule, but were not, as in the instant case, the whole testimony in support of plaintiff's case, unsupported and uncorroborated by a single further or additional fact or circumstance.

We are of the opinion that the learned trial judge reached a proper conclusion that the statements here involved came within no exception to the hearsay rule, and were therefore inadmissible; and, constituting the only evidence in support of the plaintiff's case, by their exclusion there was nothing left in support of the plaintiff's claim, and her right of action must therefore fail.

Judgment is affirmed.

BROOKE, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.