SANBORN *v*. INCOME GUARANTY CO.

1. Insurance—Accident Insurance—Waiver.

An insurance company which disallowed a claim for the accidental death of insured on the ground that death was not due to an accidental injury waived any other defense it might have to an action on the policy on the ground that insured was not totally and continuously disabled from the time of the accident, or that he was not regularly attended by a physician, as required by the terms of the policy.

2. Same—Burden on Plaintiff to Prove that Efficient, Proximate Cause of Insured's Death Was Accidental Injury.

In an action on an accident policy for the death of insured, where the defense was that death was not due to an accidental injury, it was incumbent upon plaintiff to prove that deceased did sustain an accidental injury, and that such injury was the efficient, proximate cause of insured's death.

3. Same—Issues for Jury Presented by Testimony.

Testimony by insured's wife and two physicians that they observed upon the person of insured the physical effects of an

As to liability on accident policy for sickness or death caused by blood poisoning, see annotation in 5 L. R. A. (N. S.) 926; L. R. A. 1917A, 1056.

alleged injury, and testimony by the physicians which would justify a jury in finding that said injury was the proximate cause of insured's death, *held*, to present issues of fact for the jury as to whether insured sustained an accidental injury, and as to whether said injury was the proximate cause of death.

4. Evidence—Hearsay.

Testimony by a wife that when her husband came in to luncheon he stated or "complained" that he had sustained an injury was incompetent as hearsay, and, the question of an accident being vital to the case, its admission was prejudicial.

5. Same—Statement no Part of Res Gestæ.

Nor was said testimony admissible as part of the *res gestæ*, in the absence of a showing that the husband's statement was prompted by present pain or anguish.

6. Same—Narrative of Past Occurrence no Part of Res Gestæ.

A declaration which is merely a narrative of a past occurrence, though made ever so soon after the occurrence, is not a part of the *res gestæ*.

7. Same—Burden of Showing Hearsay Testimony Admissible as Part of Res Gestæ.

The burden of showing that testimony of a hearsay character comes within the exception to the rule because of being part of the *res gestæ* is on the party offering such proof.

8. Insurance — Accident Insurance — Efficient, Proximate Cause—Instructions—Requested Instruction.

A requested instruction that plaintiff could not recover unless insured's death was brought about solely by an accidental injury and wholly independent of any other contributing cause was properly denied, and the jury were properly instructed that plaintiff was entitled to recover if an accidental injury was the efficient, proximate cause of insured's death, notwithstanding he was suffering from varicose veins, which may have contributed somewhat to the ultimate result.

Error to Wexford; Lamb (Fred S.), J. Submitted April 10, 1928. (Docket No. 73, Calendar No. 33,613.) Decided October 1, 1928.

Assumpsit by Jennie L. Sanborn against the Income Guaranty Company on a policy of insurance. Judgment for plaintiff. Defendant brings error. Reversed.

*Penny & Worcester,* for appellant.

*Fred C. Wetmore,* for appellee.

NORTH, J. This suit is based on an insurance policy. The plaintiff had judgment and the defendant reviews by writ of error. Plaintiff's husband, William F. Sanborn, died April 16, 1927. At that time he was carrying sick and accident insurance in the defendant company. His policy also provided for the payment of $5,000 to the plaintiff herein in the event of the death of the insured resulting solely from an accidental injury which totally and continuously disabled him from the happening of such accident until his death. It was made a condition precedent to recovery under the policy that death should ensue within 90 days after the injury, and in the interim the insured should be regularly attended or visited by a physician, meaning thereby that the insured should be personally so attended as often as once each seven days. For years Mr. Sanborn had been librarian of a public library, and in the discharge of his duties he was required to be on his feet much during his working hours, and for a number of years he had suffered from varicose veins. On the 16th or 17th of February, 1927, upon returning from an automobile drive, the insured is claimed to have received an injury to his right leg which caused a red spot to appear in front "directly over the bone" and below the knee. Over defendant's objection, Mrs. Sanborn testified that when her husband came into the home after the drive he

"informed her of an accident," and further testified as follows:

"This spot was nowhere near the place where the varicose veins were. There began at once to be considerable lameness and pain and I tried very often to have my husband see a physician. But we did not see a physician about it, and he would feel better during the day as the day advanced. On the 28th of February he made a trip to Detroit, coming back on the Pennsylvania (railroad) the next day. After Mr. Sanborn had returned from Detroit he complained of this leg as he had been doing; that there was pain and soreness all the time. I saw the leg every day and I thought the appearance changed some for a few days; there was one place in the middle that raised up to a little point. Dr. Ricker was called March 9th. At that time it seemed to develop more quickly—there was a long red streak at a place above the knee and that was red and very much inflamed and swollen. Much of the time the doctor came twice a day, and that continued until the 16th of April, when Mr. Sanborn passed away."

The plaintiff claims that the deceased suffered an injury of the character above indicated, and was corroborated by the testimony of Dr. Ricker, who attended the deceased during his last illness, and Dr. Warthin, who was present at the autopsy on the body of the deceased. The theory of the plaintiff is that blood poisoning resulting from the injury caused Mr. Sanborn's death.

The defendant claims it was not proven that Mr. Sanborn received an accidental injury, and, in any event, that he was not totally disabled from the date of the alleged injury to the time of his death, nor was he regularly attended by a physician as required by the policy; and further, that the death of the insured was not caused solely and exclusively

by an accidental injury, but instead was caused by thrombosis of the varicose veins, resulting in a pulmonary embolism.

From the undisputed proof it appears that Mr. Sanborn continued to perform his usual and ordinary duties at the library for several days after the alleged injury, and during that period he was not regularly attended by a physician, the injury being considered "quite insignificant," according to plaintiff's testimony. In submitting the case to the jury, the circuit judge held that the defendant had waived any defense it might have had on the ground that the deceased was not totally and continuously disabled from the time of the accident or that he was not regularly attended by a physician. The defendant has a number of assignments of error touching this phase of the case. On the 25th of May, 1927, the defendant wrote the following letter to the plaintiff's attorney:

"Re: WILLIAM F. SANBORN, deceased.

"In the matter of the claim of Mrs. Sanborn, you have submitted a beneficiary's and a physician's proof in an attempt to show that her husband came to his death by accidental means, but the company after full consideration of all the facts obtained to date, is not satisfied that death was due to accidental injury and that, therefore, the claimant is not entitled to recover principal sum allowance under the policy issued to her late husband by our company and claim has, therefore, been disallowed.

"Trusting that you will duly inform Mrs. Sanborn of the company's decision, we remain

"Very truly yours,
"JOHN G. MALMBERG,
"Vice-President."

Under the decisions of this court, the circuit judge was correct in holding, as a matter of law, that

because of this letter, written by the defendant to the plaintiff's attorney, the only defense available to the insurance company was that the death of Mr. Sanborn was not due to an accidental injury. *Towle* v. *Insurance Co.*, 91 Mich. 219; *Douville* v. *Insurance Co.*, 113 Mich. 158; *Stone* v. *Insurance Co.*, 213 Mich. 194; *Smith* v. *Insurance Co.*, 234 Mich. 119, citing other cases.

It was incumbent upon the plaintiff to prove: (1) that the deceased did sustain an accidental injury, and (2) that such injury was the efficient proximate cause of the death of the insured. It is asserted by the appellant that there was no competent proof offered tending to establish either of these elements, and that there was error in the denial of its motion for a directed verdict. It is neither necessary nor advisable to quote further from the testimony, but we find in this record the plaintiff testified that she observed upon the person of the deceased the physical effects of the alleged injury, and testimony of like character was given by Dr. Ricker and by Dr. Warthin. We also find in the record testimony by these two physicians which would justify a jury in finding that such injury was the proximate cause of Mr. Sanborn's death; and in direct conflict with this testimony is that of Dr. Giordano, a witness on behalf of the defendant. The case presented an issue of fact for the jury and the trial judge properly so held.

Certain of the appellant's allegations of error are based on the admission of testimony claimed to have been hearsay and of a prejudicial character. The following is from the plaintiff's testimony:

"When we came back from down town, I went into the house, and he (Mr. Sanborn) drove into the

garage, or started to do so and came in after he had taken care of things, for luncheon.

"*Q.* Now, during that day, did you learn of the accident?

"*A.* My best memory is that, when he came in to luncheon, he told me.

"*Mr. Penny:* We object to that as hearsay and move that her testimony, that she learned about the accident, be stricken out as hearsay.

"*The Court:* As far as that part of it goes, we will let it stand. Of course, what he said will not be admissible.

"*Q.* What I asked you about, witness, was whether or not he informed you of an accident?

"*A.* He did.

"*Mr. Penny:* That is objected to as hearsay and we move that it be stricken out.

"*The Court:* I have already ruled upon it. It may stand as far as the fact of an accident coming to her knowledge is concerned.

"*Q.* But the fact that Mr. Sanborn had received an injury came to your attention, did it?

"*Mr. Penny:* To which we object as hearsay.

"*The Court:* Answer that by yes or no.

"*A.* It did.

"*Q.* What kind of an injury was it?

"*A.* There was a bruised or red spot on the right shin."

The plaintiff's son, Frank Sanborn, was a witness in her behalf. He met his father in Detroit about ten days after the latter's injury, and on direct-examination he was asked: "At the time you saw him down there did he complain of any injury?" Answer—"He did." The defendant's objection that this testimony was immaterial and incompetent, and not contemporaneous to the reception of injury was overruled. The foregoing testimony in each instance clearly brought to the knowledge of the jury that

the deceased had stated or "complained" that he had sustained an injury. This was a vital question in this case. The testimony was hearsay and incompetent. The appellee asserts that it was not prejudicial, and that the testimony of Mrs. Sanborn was admissible as a part of the *res gestæ*. We are not in accord with the contention that it was not prejudicial. As to the testimony of Frank Sanborn, there can be no possible claim that it was admissible as a part of the *res gestæ;* nor do we think this reason for admissibility can be made to cover the testimony of Mrs. Sanborn. There is no evidence showing Mr. Sanborn's statement was prompted by present pain or anguish.

"A declaration which is merely a narrative of a past occurrence, though made ever so soon after the occurrence, is not a part of the *res gestæ*." 10 R. C. L. p. 979.

See, also, *La Duke* v. *Township of Exeter*, 97 Mich. 450 (37 Am. St. Rep. 357).

The record does not disclose definitely when or how Mr. Sanborn was injured. If we accept Mrs. Sanborn's testimony that it happened the day she and her husband drove home from down town in their automobile, still there is no proof as to whether he sustained what was then thought to be only a slight injury before they started on their drive, or while they were down town, or after their return home. If, as seems to be assumed, the injury occurred between the time Mrs. Sanborn left the automobile and the time when Mr. Sanborn came in to his noonday luncheon, "after he had taken care of things," still we have no testimony as to the length of time intervening between the occurrence of the injury and Mr. Sanborn's statement concerning it to his wife. She testified she was informed "when

he came in to luncheon.'' On cross-examination she said, ''He came into the house a little later'' (than she did). Clearly statements of this character are not sufficiently definite to justify the conclusion that Mr. Sanborn's declaration was a part of the *res gestæ*. The burden of showing that testimony of a hearsay character comes within the exception to the rule because of being part of the *res gestæ* is on the party offering such proof. In this case the burden was on the plaintiff. *Rogers* v. *Railway Co.*, 187 Mich. 490. Such a showing was not made in the present case. The objections interposed to this hearsay testimony should have been sustained. The ruling to the contrary constituted prejudicial error.

In submitting the case to the jury, the circuit judge declined to give certain of the defendant's requests to charge wherein it was stated that the plaintiff could not recover unless the death of the insured was brought about solely by an accidental injury and wholly independent of any other contributing cause. These requests were not given, but instead the construction of the restrictive clauses of the policy adopted by the court was in accordance with the law as announced in *Abbott* v. *Insurance Co.*, 208 Mich. 654, and *Kangas* v. *Insurance Co.*, 223 Mich. 238. This construction was correct.

Other questions presented by the assignments of error are either without merit or of such a character that they will probably not arise incident to a retrial of the case, and therefore will not be considered.

Because of the errors hereinbefore noted, the judgment must be set aside and a new trial ordered. The appellant will have costs in this court.

FEAD, C. J., and FELLOWS, WIEST, CLARK, MC-DONALD, POTTER, and SHARPE, JJ., concurred.