FROMAN *v.* BANQUET BARBECUE, INC.

1. WORKMEN'S COMPENSATION—HEARSAY.
    Statements made by an injured employee as to his bodily or mental feelings are admissible in proceedings under the workmen's compensation act but those made as to the cause of his illness are not admissible.

2. SAME—HEARSAY—CAUSE OF INJURY.

Rule that statements by an injured employee in proceedings un-
der the workmen's compensation act as to the cause of illness
are inadmissible applies to statements made by a deceased
workman to a fellow workman as to the cause of deceased
employee's injury.

3. EVIDENCE—HEARSAY—RES GESTÆ.

In proceedings under the workmen's compensation act, state-
ments made by an injured employee as to cause of his injury
are admissible if the statement is a part of the *res gestæ.*

4. SAME—RES GESTÆ

The only conditions upon which hearsay statements, made after
the occurrence of an event, will be allowed in evidence as part
of the *res gestæ* are: (1) that there is a startling occasion,
startling enough to produce nervous excitement and render the
utterance spontaneous and unreflecting; (2) that the state-
ment must have been made before there has been time to
contrive and misrepresent; and (3) the statement must relate
to the circumstances of the occurrence preceding it.

5. WORKMEN'S COMPENSATION—DEPARTMENT OF LABOR AND IN-
DUSTRY—INFERENCES.

The department of labor and industry may draw legitimate in-
ferences from facts established in proceedings under the work-
men's compensation act.

6. EVIDENCE—RES GESTÆ—STATEMENT AS TO PAIN.

Statement of deceased waitress to another waitress that injury
was received from fall on coffee urn while cleaning it *held,*
admissible as *res gestæ* in proceedings under the workmen's
compensation act, where it was made within 10 or 15 minutes
after occurrence of alleged accident while pressing her hand
tightly on her right side and there was evidence from which
the department could have inferred deceased was in pain when
the statement was made and that it was apparently spon-
taneous and closely connected with the happening of the acci-
dent.

7. WORKMEN'S COMPENSATION—FINDING OF DEPARTMENT—EVIDENCE.

Supreme Court will not reverse the decision of the department
of labor and industry for the admission of incompetent hearsay
evidence if there is competent evidence to sustain the depart-
ment's finding.

8. SAME—AFFIRMANCE OF DEPARTMENT'S FINDING OF FACT—EVIDENCE.

The Supreme Court must affirm a finding of fact made by the department of labor and industry if there is any competent evidence upon which the department could make a finding, as the Supreme Court does not weigh the evidence.

9. SAME—PROXIMATE CAUSE—FINDING OF DEPARTMENT—DOCTOR'S CONCLUSIONS AND OPINIONS.

In minor's proceeding to recover compensation for death of mother, who died from peritonitis and pneumonia following an operation, fact that doctor announced his conclusion that proximate cause of the physical condition of decedent as he found it when he operated was an accidental injury sustained by decedent, a waitress, when she fell while cleaning a coffee urn *held*, not reversible error where doctor also gave his opinion to that effect, since there was competent evidence upon which the department could base its finding that the accident was the proximate cause of the death.

10. SAME—DEPENDENCY—PRESUMPTIONS.

In proceedings to recover workmen's compensation, the question of dependency in whole or in part is primarily one of fact to be determined as evidence may disclose with the exception of absolute presumption of dependency irrespective of the facts in case of husband and wife or minor children under specific conditions (2 Comp. Laws 1929, § 8422).

11. SAME—CHILDREN OF DECEASED FEMALE EMPLOYEES.

The right of a child of a deceased female employee to receive compensation under the workmen's compensation act is no different than the right of the child of a deceased male employee (2 Comp. Laws 1929, § 8422).

12. SAME—TOTAL DEPENDENCY OF MINOR CHILDREN.

Child but 15 months of age who was living with her mother at time of latter's death is conclusively presumed to be dependent upon her mother who was divorced from father and awarded three dollars a week for the minor's support, hence daughter was entitled to compensation award as for total dependency (2 Comp. Laws 1929, § 8422).

13. SAME—MEDICAL AND HOSPITAL EXPENSES.

Award of medical and hospital expenses in excess of $200 in proceedings by infant daughter to recover workmen's compensation *held*, authorized by statute (2 Comp. Laws 1929, § 8420).

Appeal from Department of Labor and Industry. Submitted January 4, 1938. (Docket No. 17, Calendar No. 39,620.) Decided April 4, 1938. Rehearing denied June 14, 1938.

Veronica Froman, guardian of Louise Veronica Haywood, a minor daughter of Margaret Froman Haywood, deceased, presented her claim against Banquet Barbecue, Inc., deceased's employer, and Hartford Accident & Indemnity Company, insurer, for compensation for death caused by accident while in defendant's employ. Award to plaintiff. Defendants appeal. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal,* for plaintiff.

*Clifford A. Mitts, Jr.,* for defendants.

SHARPE, J. Margaret Froman Haywood, a young woman 19 years old and the mother of Louise Veronica Haywood, a minor under the age of 16 years, was employed by defendant Banquet Barbecue, Inc., as a waitress. She died May 15, 1936, from peritonitis and pneumonia following an operation on May 9, 1936.

Plaintiff duly filed a claim for compensation upon the ground that on April 20, 1936, deceased suffered an accidental injury which resulted in her death. The department found that on April 20, 1936, deceased while cleaning the coffee urn at defendant's restaurant slipped from a stool and struck her side against a tray or table on which the urn stood; and that she died as a result of an accidental injury arising out of and in the course of her employment. The department further found that plaintiff, Louise Veronica Haywood, was totally dependent upon deceased and awarded her compensation of $7 a week

for 300 weeks, medical and hospital bills, and $200 last illness and funeral expenses.

Defendants appeal and claim that the record contains no evidence that deceased died as a result of an accidental injury received in the course of her employment; that plaintiff was not totally dependent upon deceased; and that the department erred in awarding medical and hospital expenses in excess of $200.

We first consider whether there was any evidence to sustain the department's finding that deceased suffered an accidental injury arising out of and in the course of her employment.

The following facts appear from the record: When deceased went to work April 19, 1936, she appeared to be in good health. Her regular working hours were from 5 o'clock in the evening until the restaurant closed which was around 2 o'clock in the morning. It was her regular duty to clean the coffee urn before closing time. This was customarily done between 1:30 and 2 o'clock in the morning and on the day of the alleged accident, deceased cleaned the urn sometime between 1:30 and 1:45. The coffee urn set on a standard made for that purpose which is about three and a half feet high and four and a half or five feet long. The top of the standard or table is metal and the corners are pointed and sharp. Cleaning consists of taking the strainer out and washing down the inside of the coffee urn; and because of its height, it is customary for the girls to stand on a stool. Deceased was a short girl and stood on a stool about two and a half feet high while doing this work.

There were no eyewitnesses to the alleged accident. Thelma Bouck, a fellow employee, testified:

"*Q.* You saw her (Mrs. Haywood) clean the coffee urn?

"*A.* Yes, sir.

"*Q.* And she didn't start until after 1:30, did she?

"*A.* Between 1:30 and 2 o'clock. It usually took me from 10 to 15 minutes to clean it. I imagine I am a little faster worker than she was, or may be a little slower; I judge she took about 10, 15 minutes, put that down. * * * After she cleaned the coffee urn she told me about hurting herself. * * *

"*Q.* It was right after the coffee urn was cleaned she told you she hurt herself?

"*A.* Yes, sir. * * * She said, 'Thelma, I have hurt myself, I fell and hurt myself on the coffee urn.'

"*Q.* Did she say what she was doing when she fell?

"*A.* Cleaning the coffee urn. When she said that she put her right hand on her right side."

Mr. Crowley saw the deceased at 1:45, he testified:

"I was there about quarter to two. As I came in there I saw Mrs. Haywood. She was sitting on an end stool, holding her right side, with her hand over it, pressed tightly. There were tears coming into her eyes, though she wasn't crying to great extreme."

Deceased arrived home shortly after 2 o'clock. Her mother testified as follows:

"*A.* I found a spot about like that raised up under the skin where she was black and blue.

"*Q.* You say that would be two and a half inches across there?

"*A.* About like that.

"*Q.* On what side?

"*A.* Right there (indicating).

"*Q.* Let us show that on the record. On the right side.

"*A.* Well, yes, right here."

Defendants contend that the deceased's statement to Thelma Bouck is hearsay, while the plaintiff contends that it is admissible as part of the *res gestæ.*

In the early compensation case of *Reck v. Whittlesberger,* 181 Mich. 463 (Ann. Cas. 1916 C, 771, 5 N. C. C. A. 917), this court held:

" 'The statements made by an injured man as to his bodily or mental feelings are admissible, but those made as to the cause of his illness are not to be received in evidence. The rule applies to statements made by a deceased workman to a fellow workman as to the cause of his injury.' "

However, if the statement is a part of the *res gestæ,* it is competent and admissible. The test was laid down in *Rogers v. Railway Co.,* 187 Mich. 490:

"The exception is based upon the fact that such exclamations, by virtue of origin, have a peculiar trustworthiness. It is well established by the authorities that the only conditions upon which such statements will be allowed in evidence are (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it. 3 Wigmore on Evidence (1st Ed.), § 1750 *et seq.*"

This court has applied this rule many times. See *Stone v. Sinclair Refining Co.,* 225 Mich. 344; *Bunker v. Motor Wheel Corp.,* 231 Mich. 334; *Rife v. Gafill Oil Co.,* 235 Mich. 15; *Sanborn v. Income Guaranty*

*Co.,* 244 Mich. 99; *Ayling* v. *City of Detroit,* 275 Mich. 338.

The department may draw legitimate inferences from established facts. *Ginsberg* v. *Burroughs Adding Machine Co.,* 204 Mich. 130; *Weenink* v. *Allen Electric & Equipment Co.,* 276 Mich. 561. It may have reasonably inferred that the statement to Thelma Bouck was made within, at most, 10 or 15 minutes after the accident; and there is some evidence from which the department could have inferred that deceased was in pain when this statement was made. The declaration was apparently spontaneous and so connected with the accident as to be a part of the *res gestæ.* See *Bunker* v. *Motor Wheel Corp., supra.* Moreover, this statement does not stand alone as the only evidence of the accident. The fact that when deceased left home for work she was cheerful and in good health, the customary and necessary practice of standing on a stool to clean the coffee urn, the sharp edge of the table on which the urn sets, the condition in which Mr. Crowley found deceased within 5 or 10 minutes after the accident and before she left the restaurant, the swollen black and blue spot which appeared on deceased's side where she claimed to have been injured are all evidence which bore out and substantiated deceased's statement.

Defendants next contend that there is no evidence that the accidental injury was the proximate cause of Margaret Haywood's death. On this point the department found:

"In the testimony of Dr. Raymond Scully it was stated that the acute appendicitis was aggravated, or produced, by the injury to the deceased's side. The immediate death was caused by peritonitis and

pneumonia as the result of the operation. Dr. Scully performed the operation and, from an examination of the cecum and the appendix removed, it was his opinion that the injury was the cause of the deceased's appendicitis. He stated that it is possible for acute appendicitis to develop with the traumatic cause."

The only medical witness was Dr. Scully who testified as follows:

"I performed the operation myself on the 9th of May. She died later on caused by peritonitis and pneumonia as a result of this infection and inflammation.

"Q. But caused by what?

"A. The infection of the bowel.

"Q. From what: Have any relation to trauma?

"A. Could very well.

From my diagnosis it did. Trauma devitalizes tissue and infection sets in very easily. From my diagnosis that is the thing that started it. Trauma means injury some violent injury. The initial cause of death apparently was this injury that she had, which developed the inflammation and infection of the bowel. And from that peritonitis followed. I did not find any ruptured appendix. I found the appendix acutely inflamed. * * *

"An injury to the cecum, or cecitis, can very well develop into appendicitis, because the inflammation may travel down; the cecum is a blind pouch, and pus or infection can accumulate there very readily and go down into the appendix. Infection spreads from the cecum to the appendix. * * *

"It would be difficult to say whether the condition was absolutely due to injury or due to some other inflammation.

"If the girl came home as the mother testified and she found a black and blue mark about two and a half inches across in the vicinity where you de-

scribed, that would indicate that she received a blow. That is something that just a layman knows. When I cut in there, I found this condition of the cecum. The black and blue mark could be the trauma that caused the condition I found in the cecum. Probabilities are it did. That was my diagnosis. * * * The probabilities of that cecum becoming infected to the extent that it was from anything other than injury are very slight. It is my opinion that the cecum became infected due to injury and devitalization of the tissue by the injury.''

Defendants claim that Dr. Scully's testimony is incompetent under the rule laid down in *De Groot* v. *Winter,* 261 Mich. 660. Timely objection was made to the doctor's testimony at the hearing on the ground that his conclusions are based upon facts which are not supported by the evidence; and that he could not give his conclusions although he could express an opinion. Although the doctor did announce his conclusion, he also expressed his opinion that the injury was the cause of the physical condition which he found. In *Ginsberg* v. *Burroughs Adding Machine Co., supra,* 137, we said, ''we should not reverse the case for the admission of incompetent hearsay evidence. If there is competent evidence to sustain the finding, the case should be affirmed.'' Upon questions of fact, if there is any competent evidence upon which the department could make a finding it is our duty to affirm; we do not weigh the evidence. *Becker* v. *City of Detroit,* 267 Mich. 511; *Wilson* v. *McCabe & Dishaw,* 274 Mich. 74; *Cazan* v. *City of Detroit,* 279 Mich. 86.

Defendants next claim that plaintiff was not totally dependent upon deceased. The record shows that, under a divorce decree, Mrs. Haywood had been given custody of plaintiff, her 15 months' old

daughter, and awarded three dollars a week for the minor's support. Defendants state their claim in their brief, but do not argue the point. We do not find that the precise question raised here has been passed upon by this court.

Section 8422, 2 Comp. Laws 1929 (Stat. Ann. § 17.156), provides:

"The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee: * * *

"(b) A child or children under the age of 16 years, * * * upon the parent with whom he or they are living at the time of the death of such parent. * * * In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury."

In *Finn* v. *Railway*, 190 Mich. 112, 119 (L. R. A. 1916 C, 1142, 13 N. C. C. A. 187), we said:

"Dependency in whole or in part is primarily and as a rule a question of fact to be determined as evidence may disclose, with the exception of an absolute presumption of dependency (irrespective of facts) in case of husband and wife or minor children under specific conditions."

In *Nordmark* v. *Indian Queen Hotel Co.*, 104 Pa. Super. Ct. 139 (159 Atl. 200), the court said:

"The act makes no distinction between male and female employees in respect to the obligation of the employer to pay compensation. By its terms when a father or a mother or any other person is employed, as this mother was, there arises an implied contract on the part of the employer to pay, in case of death, compensation to the person entitled under section 307 (Workmen's Comp. Act of June 2, 1915, P. L. 736, as amended). That section does not make actual

dependency of a child, under the age of 16 years, on his parent a condition precedent to his right to receive compensation upon the death of such parent. His right to receive compensation arises from his status as a child of the employee, under the age of 16 years. The obligation of the employer to pay compensation to a child, under the age of 16 years, of a deceased employee arises from his status as an employer or master of an employee who is the father or mother of such a child. If the legislature desired to impose upon an employer of the mother of such a child a different obligation, in respect to the payment of compensation to such child, it would have been a simple matter to do so. But it did not. A construction of the statute to the effect that the right of the child of a deceased female employee to receive compensation is different from the right of the child of a deceased male employee is unwarranted by its provisions. Such a construction would amount to judicial legislation.''

The record shows that plaintiff was under 16 years of age, was living with her mother at the time of her mother's death and under the statute is conclusively presumed to be dependent.

The claim is made that the department was in error in awarding medical and hospital expenses in excess of $200. Authority for such an allowance may be found in 2 Comp. Laws 1929, § 8420 (Stat. Ann. § 17.154).

The award is affirmed, with costs to plaintiff.

Wiest, C. J., and Butzel, Bushnell, Potter, Chandler, North, and McAllister, JJ., concurred.