## FORT STREET UNION DEPOT CO. v. HILLEN.

### No. 8726.

Circuit Court of Appeals, Sixth Circuit.

April 16, 1941.

HICKS, Circuit Judge, dissenting.

———◆———

John C. Shields, of Detroit, Mich. (Seward L. Merriam, John C. Shields, and Wm. R. Althans, all of Detroit, Mich., on the brief), for appellant.

Ernest A. Michel, of Minneapolis, Minn. (Davis, Michel, Yaeger & McGinley, Tom Davis, and Ernest A. Michel, all of Minneapolis, Minn., and Emerson H. Schink, of Detroit, Mich., on the brief), for appellee.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal is taken from a judgment rendered on a verdict in favor of the appellee, who brought an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for the death of her husband, Samuel Hillen, who was injured while working as a switchman in appellant's terminal railroad yards at the Fort Street Union Depot in Detroit, Michigan. Liability was asserted to arise out of the alleged violation by appellant of Sections 4 and 8, Title 45 U.S.C., 45 U.S.C.A. §§ 4, 8, (the Federal Safety Appliance Act), which require all cars used by any railroad engaged in interstate commerce to be provided with secure grabirons or handholds. Appellant contends that inadmissible testimony was received in evidence; that the court erred in not granting its motion for a directed verdict made at the conclusion of the case, and that the statutes relied upon are not applicable.

The appellant makes up and breaks up trains for the Pere Marquette, the Wabash,

and the Pennsylvania Railroad, switching them for this purpose within the depot yards and transferring freight, express and baggage to other cars wherever necessary. The switching operations are under the sole charge of appellant. At the place where the accident occurred nine tracks extend westerly from the depot and are numbered from north to south. Tracks No. 6 and No. 7 are adjacent and spaced so as to provide sixteen inches clearance between the grabirons when standard cars occupy both tracks at the same time.

On the morning of February 2, 1939, cars which had been a part of Wabash passenger train No. 44 were standing on track No. 7. Among these cars was a club car bearing the number 1552. A Pere Marquette passenger train called the "Sportsman" arrived from Richmond, Virginia, and pulled into track No. 6 where its passengers were unloaded at the cement platform on the north side of the track. In order that the engine on this train might be taken to the roundhouse to be serviced, the appellant's switch engine was coupled to the west end of the train, pulled the cars in a westerly direction far enough to release the road engine and then shoved them back on track No. 6. As a member of the switching crew and acting as "field man" that morning, it was Hillen's duty to ride C. & O. car 258, which was on the end of the Pere Marquette train next to the depot, and stop the train when and where desired by using an air hose equipped with a lever for that purpose. The train, which was moving at four or five miles an hour, was stopped not by Hillen, but by the conductor, and thereafter Hillen was found on the ground between tracks Nos. 6 and 7 with a severe injury to his hip, which resulted in his death. Near the point where Hillen was found stood Wabash car 1552 with a grabiron whose lower end was not connected. A part of one of the two bottom bolts of the grabiron was found in the snow on the ground nearby and appeared to have been sheared off or broken.

Apart from Hillen's own statement there was no direct testimony as to how the injury occurred. It is appellee's theory that the grabiron was defective before the accident and that because it protruded it knocked Hillen from the corner of the car on which he was riding. Appellant claims that the grabiron was in good condition immediately before the accident and was broken either because Hillen allowed his hip to become wedged between the car on which he was riding and the grabiron, or in some other manner. Each side offered testimony tending to support its theory of the case and in large part the two accounts were irreconcilable.

Appellant introduced two witnesses who testified that they had seen the grabiron in question in perfect condition before the accident. Another of appellant's witnesses testified that after the accident it was bent to the east (the direction in which Hillen's train had been moving) and that "It was twisted in on the inside of the steps." On the other hand, one of appellee's witnesses testified that after the accident he noticed that the grabiron was bent outward towards the other track a distance of four or five inches "and a little towards the east." The opinion of appellee's expert was that the bolts holding the grabiron could not be sheared off by Hillen's body, no matter where or how he was riding; and the testimony of the doctor offered by the appellant indicated that a "fairly good sized hole" "two and a half to three inches in circumference" in Hillen's back or hip had been caused by breakdown of tissue as a result of a blow or bruise and consequent infection.

■ Appellant's objection that inadmissible evidence was received relates to the most telling testimony introduced on behalf of the appellee. Two witnesses were allowed to testify over appellant's objection as to a statement made by Hillen at the scene of the accident, to the effect that Hillen had been riding the corner of the car and had been struck in the back or hip by the grabiron and "got knocked off." Appellant urges that the court, in admitting this evidence, committed reversible error. The statement was received under the res gestae rule which justifies the admission of testimony of a hearsay nature on the ground that the spontaneity and unreflecting character of extra judicial statements are taken as sufficient safeguard of trustworthiness. To be admissible it must appear that such statements were made under circumstances showing lack of opportunity for reflection. The time elapsing after the injury, the extent of the injuries, and all the circumstances bearing on spontaneity and lack of deliberation are factors to be considered. Here the actual time in minutes after the accident was not specifically shown but the circumstances and the movements of the witnesses clearly indicate, we

think, that the statement was made about five minutes after the injury. There was evidence that Hillen was discovered while the Sportsman train was still moving, and Hillen's statement was made when he was first moved, as his head was raised from its position in the snow. He was in great pain at the time. Cf. Froman v. Banquet Barbecue, Inc., 284 Mich. 44, 278 N.W. 758.

■ Much must be left to the sound discretion of the trial judge in rulings on admissibility of evidence of the instant character. Somogyi v. Cincinnati, N. O. & T. P. R. Co., 6 Cir., 101 F.2d 480, 482. As authority for the exclusion of this evidence appellant relies upon a group of cases in which testimony as to statements claimed to be admissible under the principles of res gestae was excluded. Among the cases cited are Rogers v. Saginaw-Bay City Ry. Co., 187 Mich. 490, 153 N.W. 784; Sanborn v. Income Guaranty Co., 244 Mich. 99, 221 N.W. 162; Aetna Life Ins. Co. v. Kern-Bauer, 10 Cir., 62 F.2d 477. We do not think these cases controlling and think rather that the statements here were entitled to be considered. While no two cases present the same problem on a question of this type, and every case must depend on its particular facts, our conclusion is in harmony with the more recent decisions on the point. Froman v. Banquet Barbecue, Inc., supra; Carter v. C. F. Smith Co., 285 Mich. 621, 281 N.W. 380; Marsh v. Preferred Acc. Ins. Co., 6 Cir., 89 F.2d 932. Cf. Rule 43(a), Federal Rules of Procedure, 28 U.S.C.A. following § 723 c. The statement was clearly admissible.

■■ The testimony outlined above disposes of the question as to whether there was substantial evidence to support the verdict both as to the existence of a defective grabiron prior to the accident and as to its being the proximate cause of the injury. The jury evidently disbelieved appellant's testimony that the grabiron was twisted on the inside of the steps and believed appellee's story that the grabiron was bent outward towards the other track a distance of four or five inches, and a little toward the east. It was the function of the jury to decide which of these stories it would accept. Since Hillen's statement as to the cause of his fall was rightly admitted, there is ample evidence that the accident was caused by the defective grabiron protruding at least two or three inches beyond its normal position at the side of the car. It is asserted that Hillen could have stopped the move-

ment at the proper place by standing in the doorway of the lead car but instead chose an unnecessarily dangerous method of performing his duties. These circumstances amount to no more than evidence of contributory negligence or assumption of risk which are "removed from consideration by the Liability Act." Chicago G. W. R. Co. v. Schendel, Adm'r, 267 U.S. 287, 292, 45 S.Ct. 303, 305, 69 L.Ed. 614.

■ The statements of the porter and conductor of the Wabash car some fourteen months after the accident, that upon the morning of February 2, 1939, each one of them specifically observed the condition of this particular grabiron, evidently were not believed by the jury. The conductor's statement that the grabiron was in perfect condition was made as to the condition existing at 7:40 A. M., the time the Wabash car arrived in the station. No statement was made by the conductor bearing upon the condition at any later moment. The accident occurred at about 8:30 A. M. As to the porter, the jury may have considered it incredible that he should have walked four times along the narrow strip of rough wet ground between tracks Nos. 6 and 7 instead of going to the baggage room upon the covered cement platform which was to the south of track No. 7, in order to fulfill his duties at the station, and that with his towels and supplies he should have used "both hands in getting up in the car." The credibility of these and other witnesses was a question for the jury and it was at liberty to disregard part or all of the testimony that this grabiron was in perfect condition immediately prior to the accident. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Chesapeake & Ohio R. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983; DeHaan v. Winter, 265 Mich. 101, 251 N.W. 391.

■ While there seems to have been an agreement that a part of one of the bolts which had been newly broken or sheared off was found at the scene of the accident, in the light of the testimony of appellee's witnesses, the jury evidently inferred that the bolt had been broken some time before and that the part discovered merely failed to drop off out of its socket until the car was placed where the accident occurred, or thereafter. Where there is substantial evidence sufficient to take the case to the jury, no amount of contradictory evidence will authorize a directed verdict. Grand Trunk Western R. Co. v. Collins, 6 Cir., 65 F.2d

**312**

875; Great Atlantic & Pacific Tea Co. v. Chapman, 6 Cir., 72 F.2d 112.

 Difficult as the application of a general test may be in individual cases it is helpful to keep in mind the distinction that the question presented is not one as to the weight of the evidence, but merely whether there is substantial evidence to support a verdict for the appellee. The District Court did not err in refusing to direct a verdict for appellant.

Finally, appellant contends (1) that the record does not establish that it was a "common carrier by railroad" within the meaning of the Federal Employers' Liability Act, Title 45, U.S.C., Section 51 et seq., 45 U.S.C.A. § 51 et seq.; (2) that the Wabash car was not in "use" within the meaning of the Safety Appliance Act, Title 45 U.S.C., Sections 1–16, 45 U.S.C.A. §§ 1–16; (3) that appellant was not within the class protected by the Safety Appliance Act.[1]

 Upon all of these questions we think that the judgment must be affirmed. It is no longer open to dispute that a terminal company engaged in furnishing terminal facilities and services is a common carrier where the character of the service in its relation to the public demonstrates its nature as a common calling. Union Stock Yard & Transit Co. v. United States, 308 U.S. 213, 220, 60 S.Ct. 193, 84 L.Ed. 198; United States v. Brooklyn Eastern District Terminal, 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed. 613, 6 A.L.R. 527. The services performed at appellant's depot were railroad transportation services performed at a railroad terminal for the public, and in rendering such service appellant became a common carrier by railroad within the purview of the statute.

 The Wabash club car had not been withdrawn from service and was in "use" within the meaning of the statute even though motionless. Brady v. Terminal R. Ass'n, 303 U.S. 10, 13, 58 S.Ct. 426, 82 L. Ed. 614; Minneapolis, St. P. & S. S. M. R. Co. v. Goneau, 269 U.S. 406, 46 S.Ct. 129, 70 L.Ed. 335; Chicago G. W. R. Co. v. Schendel, supra.

 Also appellee is entitled to avail herself of the benefits of the Safety Appliance Act. Providing secure grabirons undoubtedly contributes to the safety of employees engaged in switching operations upon cars moved in close proximity to tracks on which other cars are standing. The benefits resulting from performance of a duty imposed by statute usually determine what persons are entitled to claim its protection. Fairport, P. & E. R. Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L. Ed. 1446. The fact that certain classes of persons were intended to be primarily protected by the discharge of a statutory duty will not necessarily prevent others, neither named nor intended as primary beneficiaries, from maintaining an action to recover for injuries caused by the violation of such legislative command. Atchison, T. & S. F. R. Co. v. Reesman, 8 Cir., 60 F. 370, 23 L.R.A. 768.[2] The Act is remedial and humanitarian in purpose and calls for appropriate liberal construction. It is not necessary that the employee be engaged in an operation in which the safety appliances are specifically designed to furnish him protection. Davis v. Wolfe, 263 U.S. 239, 44 S.Ct. 64, 68 L.Ed. 284. Nor is it necessary that the injured person be using the defective device. Fairport, P. & E. R. Co. v. Meredith, supra. The Act gives a "right of recovery for every injury the proximate cause of which was a failure to comply with a requirement of the act." Swinson v. Chicago, St. P., M. & O. R. Co., 294 U. S. 529, 531, 55 S.Ct. 517, 79 L.Ed. 1041, 96 A.L.R. 1136.

The judgment is affirmed.

[1] The material portions of the cited statutes are as follows: Sec. 51. "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, * * * for such injury or death resulting in whole or in part * * * or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances * * *. or other equipment."

Sec. 4. "* * * it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

Sec. 8. "* * * the provisions and requirements relating to * * * grab irons * * * shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce * * *."

[2] Opinion by Mr. Justice Brewer.

HICKS, Circuit Judge (dissenting).

I concur in the opinion of the court that the statements of Hillen were competent under the res gestae rule, and also in the conclusion that appellant was a common carrier within the meaning of the Federal Employers' Liability Act but I think that appellant was entitled to a directed verdict. The gravamen of the complaint is, that Hillen's death was caused by appellant's failure to maintain a secure grabiron on the club car. By a secure grabiron the statute means a grabiron sufficiently secure for use as a handhold.

The substance of the testimony of the porter on the club car was that the grabiron was in perfect condition up to the moment of the accident.

The conductor testified that the grabiron was in perfect condition at the time of the arrival of the train; otherwise it was his duty to notify the car inspectors and make a record in his train book of anything wrong and that there is nothing of the kind in the book. If this is true, appellee's action fails, and I cannot agree that the jury was justified in disbelieving these witnesses. Their testimony was not discredited by any test of which I am aware. No statement of theirs was involved in any inconsistency or discrepancy upon any material matter. The testimony relied on to contradict these witnesses was that of appellee's expert. I think that the testimony of the expert is entitled to little or no weight, first, because he made only a casual examination of the broken bolt in evidence. He was a metallurgist, but made no test of its tensile strength nor examination of its microscopic structure; on this point he testified simply that bolts like these, presumably new ones, could resist a pressure of 25,000 pounds to the square inch. In the second place, I seriously doubt whether he should have been permitted to say that Hillen's body could not have sheared off the bolts. When he said that he meant of course that it did not, and from my viewpoint this was an invasion of the function of the jury in determining a material issue. Third, the hypothetical question put to the expert omitted a most material element, to wit, the force by which Hillen was being projected by the moving train into a space too narrow for clearance.

Fourth, the testimony of the expert that Hillen's body could not shear the bolts, is in the face of the obvious fact that it did. The inference, which arises from his testimony, does not negative the fact. On the other hand, the fact refutes the inference. Hillen's statement was that while "he was riding the corner of the car something hit him in the back and knocked him off." This "something" was of course the grabiron, else appellee has no case; and to my mind there is no room for doubt that the impact broke the grabiron and its fastenings. We seek in vain for any other possible explanation in view of Hillen's broken hip, the freshly broken bolts, one of which was found on the snow beneath, and the condition of the iron itself, which was bent across the doorway of the vestibule of the club car and in the same direction the train that Hillen was riding on was moving.

Finally, let us assume that the expert was right and that Hillen's body could not and did not shear the bolts. The only inference therefrom is that they were sheared from some other unexplained cause in connection with the accident itself and this is the extent of it and raises no inference of statutory violation. With all due respect for the opinion of the court, I find no basis to support a finding that the grabiron was out of order prior to the accident.