## ROGERS v. UNITED STATES.

### No. 10156.

Circuit Court of Appeals, Fifth Circuit.

June 23, 1942.

Rehearing Denied Sept. 18, 1942.

W. D. Bell, of Miami, Fla., for appellant.

H. S. Phillips, U. S. Atty., and J. Tweed McMullen, Asst. U. S. Atty., both of Tampa, Fla., for appellee.

Before HUTCHESON and HOLMES, Circuit Judges, and STRUM, District Judge.

HUTCHESON, Circuit Judge.

Appellant was convicted, on an indictment in two counts, of violations of the Internal Revenue Laws and sentenced to serve two years, a punishment less than the maximum which could have been imposed for violation of the first count alone. Claiming error in his conviction as to both counts because of the insufficiency of the indictment to charge, and of the evidence to convict him of, an offense, and also of the denial of his request for additional time after arraignment to prepare for trial, he also claims error as to the second count in the admission over his objection and motion to quash, of evidence obtained upon a search warrant. It is difficult to discover from appellant's brief just what the claimed fault in the indictment is. The motion to quash seems to find the defect in the statute[1] under which appellant was indicted. It charges that the statute and the indictment based thereon, are contrary to the 5th and 6th Amendments to the Constitution. In the brief the claim is that the indictment deprives the defendant of due process of law in that it does not inform him of the nature and cause of ac-

---

[1] Section 2803, Int.Rev.Code, Title 26 U.S.C.A.Int.Rev.Code, § 2803.

974

cusation against him, and that, if it finds support in the statute, the statute also denies due process. Because of appellant's claim of poverty and misfortune we have, notwithstanding the meagreness of the help furnished by his brief, carefully examined the indictment for the omissions and deprivations claimed. We do not find them. Grimsley v. United States, 5 Cir., 50 F.2d 509, invoked by appellant, while containing a correct statement of the law, has no application here. For here the indictment in each count simply but completely charges the commission of acts which constitutes offenses.

■ Appellant's position that he should have had more time to prepare for trial, is not ·any better taken, for the record shows that more than 20 days in advance of the setting of the case for trial he was notified of the date set. ·Appellant's view, that notwithstanding the notice, that the case would be tried on that day, if his pleas and demurrers were overruled,.he was entitled as of right to further time for preparation after they had been overruled and he had been arraigned, finds no support either in the law or in good practice. Besides no showing is made that defendant was deprived of the testimony of any witness, or that he sought or was denied process to obtain the attendance of any.

■ On the merits it is quite plain that the evidence made a clear issue of fact as to defendant's guilt on the first count and there was no error in refusing appellant's motion to direct a verdict. The evidence for the government was rather meagre. The defendant's son did assume the responsibility for the liquor in question and defendant and his son contra-

dicted the testimony of the state revenue officer[2] that defendant was concerned in the liquor transaction dealt with in the first count. But all of this was for the jury and their verdict settled against defendant the issue made. No error attending the conviction on the first count, and the judgment and sentence imposed being for a term less than could have been imposed for its violation alone,[3] it becomes unnecessary for us to consider the correctness of appellant's claim that it was error, to refuse to quash the search warrant, and to reject the evidence on which the conviction on the second count was based.

The judgment is affirmed.

[2] This officer testified that he, accompanied by others, drove up to defendant's home; that his son, James Rogers, came out to the gate and one of those in the car got out of the car and told James he wanted to get five gallons of moonshine; that they gave him a jug out of the car and that about that time the defendant, his father, came out of the house. "James Rogers went around back of the house and in about 3 minutes was back with a jug of liquor. We asked him how much it was and he said $10.-00, and one of the men with me handed $10.00 to James and James handed it to his father and he put it in his pocket and we drove away. The defendant here on trial was standing there at the car while the other man was away and he talked

to us at the gate. We told him we were in the liquor business in a small way and were just getting started and we would be back to get more liquor if we didn't get caught. He said if we did that if we had a hatchet or hammer, to break it up. He knew that we had come to buy liquor and he was present when the jug was put in the car. The container did not have any internal revenue stamp on it and its contents were whiskey. I did not speak to defendant. I made a deal with the boy to get some liquor but we paid the boy and his father."

[3] Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692; Abrams v. United States, 250 U.S. 616, 40 S. Ct. 17, 63 L.Ed. 1173; Coupe v. U. S., 72 App.D.C. 86, 113 F.2d 145.