300 F.2d 377
 UNITED STATES of America, Plaintiff-Appellee.
v.
Daniel J. KOENIG and Charles Forest Waugaman, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel J. KOENIG, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Forest WAUGAMAN, Defendant-Appellant.
 Nos. 14589-14591.
 United States Court of Appeals Sixth Circuit.
 March 14, 1962.
 
 Eugene L. Matan, Gareff, Matan & Janes, Columbus, Ohio, for appellants.
 Edward J. Lee, Dept. of Justice, Washington, D.C. (Herbert J. Miller, Jr., Asst. Atty. Gen., Joseph P. Kinneary, U.S. Atty., Columbus, Ohio, on the brief), for appellee.
 Before MARTIN and WEICK, Circuit Judges, and DARR, District Judge.
 MARTIN, Circuit Judge.
 
 
 1
 Appellants in these consolidated appeals, Daniel J. Koenig and Charles Forest Waugaman, were jointly convicted by jury verdict of conspiracy in violation of Title 18, section 751, United States Code. They were charged with conspiring to escape from federal custody in the Columbus Ohio, City Jail; and were convicted separately of attempting to escape from the custody of the federal section of the Columbus Coty Jaul, where each was confined on a felony charge by virtue of due federal process. Each appellant was sentenced to imprisonment for a total period of ten years.
 
 
 2
 We find no merit in the contentions of appellants based on the following respective averments: (1) that the indictments did not adequately apprise appellants of the elements of the crime charged so as to protect them from being charged again with the same offenses; (2) that the trial court abused its discretion in refusing to grant bills of particulars, as requested by the defendants; (3) that the trial judge erred in denying a change of venue because of pre-trial publicity; (4) that the trial court abused its discretion in denying a motion for continuance, based upon alleged insufficiency of time for preparation of the trial because of adverse pre-trial publicity, and the alleged improper setting of the cases for trial.
 
 
 3
 That the indictments were adequate to apprise defendants of the charge against them and to protect them against double jeopardy is supported by authority. See Gibson v. United States, 244 F.2d 32 (C.A. 4); Wilson v. Hudspeth, 106 F.2d 812 (C.A. 10).
 
 
 4
 For authority that there was not abuse of discretion by the trial court in refusing to grant a bill of particulars, see Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Cottingham v. United States, 228 F.2d 904, 905 (C.A. 6).
 
 
 5
 The trial judge committed no error in refusing to grant a change of venue. See Butzman v. United States, 205 F.2d 343, 350 (C.A. 6), certiorari denied 346 U.S. 828, 74 S.Ct. 50, 98 L.Ed. 353; Spaeth v. United States,254 F.2d 924 (C.A. 6), certiorari denied 358 U.S. 831, 79 S.Ct. 52, 3 L.Ed.2d 69.
 
 
 6
 That the trial court did not commit an abuse of discretion in denying the motion for continuance is supported by the principles of the following cases, among others: Rogers v. United States, 128 F.2d 973, 974 (C.A. 5); Franken v. United States, 248 F.2d 789, 790 (C.A. 4), certiorari denied355 U.S. 956, 78 S.Ct. 541, 2 L.Ed.2d 532; United States v. Moran, 194 F.2d 623, 625 (C.A. 2), certiorari denied 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362; Finnegan v. United States, 204 F.2d 105, 110 (C.A. 8), certiorari denied 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347.
 
 
 7
 In the trial of the case, however, the United States District Judge overstepped the bounds of judicial propriety on numerous occasions to the extent that, in our considered judgment, the appellants were denied a fair trial which is guaranteed to them by the Constitution. The flagrant instance was the action of the Court in its attitude and remarks, when appellant Charles Forest Waugaman was on the stand. The witness stated that a fellow prisoner (Massey) had approached him, asking if he would like to break out of the Columbus City Jail; that the defendant told him 'No.' Whereupon, Massey 'went into some detail of some vague plan he had.'
 
 
 8
 The Court interrupted: 'You just tell what he said. You don't need to describe detailed and vague plans. Tell us what was said, if anything. We are not going to sit here for three days and listen to a long tedious story which is not material, like your co-defendant gave us, Mr. Koenig. We want the facts in this case and we want the truth.'
 
 
 9
 The befuddled defendant questioned: 'Just exactly what am I supposed to say, sir?'
 
 
 10
 The defendant testified that he had been approached by Massey six, seven or eight times-- at least more than six. His lawyer asked if he would relate any conversations had with Massey; but the Court cut the witness off by saying: 'He hasn't said he had any conversations.'
 
 
 11
 In adjourning the session, the Judge stated to the jury: 'The Court feels it has a duty at this time to admonish the jury that you are trying this case solely upon the evidence adduced on the witness stand and the law as given you by this Court. The Court will specifically instruct you that you are not to pay any attention whatever to any crying scenes put on in this courtroom by either of the defendants. You are not to be influenced by things of that character. You have a sworn duty to try the case on the evidence and the law alone, not on sympathy or sentiment. So 1 will instruct you to disregard the crying scene put on by the defendant Koenig just before the recess.'
 
 
 12
 When the defendant, Waugaman, resumed the stand the trial judge cross-examined him vigorously as to his knowledge of a conspiracy for prison breach. The witness said he had heard something about it but did not believe the gossip. The judge pressed him as to whether his co-defendant Koenig's statement was truthful regarding the talk in corridors concerning prisoners. Waugaman replied that he could not testify as to Koenig's testimony, but could testify only to his own.
 
 
 13
 The Court interrupted: 'You heard his testimony?' The witness repeated, 'I can't testify for Mr. Koenig.'
 
 
 14
 The Court again pressed him to state whether he had heard Koenig's testimony. Waugaman answered that he had. The Court then asked: 'Did you hear his statement about it was common knowledge among all the prisoners * * * that they were planning an attempt to break?'
 
 
 15
 Defendant Waugaman admitted that he had heard the statement made by Koenig; and the judge asked: 'Then, you did know something about it?' The defendant replied: 'No, sir, I did not.'
 
 
 16
 Counsel intervened to explain, when the judge shut him off with the remark: 'He has admitted he knew about it.'
 
 
 17
 Appellant Waugaman stated: 'I did not admit I knew about it.'
 
 
 18
 The judge said: 'You heard it, didn't you?' To this, Waugaman answered: 'I thought it was a joke, sir. I did not take it seriously.'
 
 
 19
 The judge's attitude was very antagonistic toward appellant's counsel. He admonished attorney Matan to 'object and otherwise keep still.' In another of his frequent colloquys with the defendant, the judge pointed out that Waugaman had fired the lawyer appointed by the Court to defend him; and asked defendant if it were not a fact that he could probably have had a trial on the bank robbery charge, if he had not caused so many delays. Attorney Matan objected to 'all this.'
 
 
 20
 The District Judge then commented: 'He can't throw smoke in the eyes of this jury and the Court on situations which are untrue. The Court has something to say about this. This man was brought into Court. He didn't have counsel and the Court offered to appoint counsel. The Court did appoint counsel for him and later on he fired his counsel and then you come in with a Texas lawyer and a Miami lawyer.'
 
 
 21
 Attorney Garaff protested: 'But I don't see that he is accusing this Court.' The judge replied: 'I think it is a direct charge against the Court.' Attorney Garaff stated: 'I will apologize if you feel that it is. It is not meant that way at all.'
 
 
 22
 The Court was adamant: 'He can't sit there and charge this Court with something which is not true and knows it is not true.' The witness stood pat and stated: 'This is my belief, sir.'
 
 
 23
 To this, the Court replied: 'You have a lot of beliefs. * * * You can't throw dust and smoke in the eyes of the jury and the Court by these police court tactics which you have been following throughout this trial.'
 
 
 24
 Another trial incident in which we think the United States District Judge's conduct was prejudicial to appellants occurred in connection with the testimony of a witness for the defendant (Thomas West) who previously had been sentenced by the judge in a criminal case. The judge had pointed out during the young man's examination that, when the witness had appeared previously before the court, he had not known whether he was 18, 19, or 20 years old. Attorney for defendant objected; whereupon, the Court stated that the witness might be held for perjury. He brought the witness back after he had left the stand and asked if the witness had not falsified his age. The witness stated that he had. During the ensuing colloquy, the judge became rather rough with counsel, stating; 'The Court is getting tired of police court tactics used by counsel for the defendants. You are in a Federal Court, you are not in a police court, and we expect you to adhere to the rules of evidence. Now, if you have further questions you may ask them, if they are proper.'
 
 
 25
 Examination of the record shows an extremely hostile attitude toward the defendants and their counsel by the trial judge. A few of the leading instances illustrative of this have been related above. It seems unnecessary to detail certain others. One additional illustration will suffice.
 
 
 26
 The defendant Koenig was on the stand. He had been questioned as to whether, while in prison, he had attempted to bribe Patrolman Feathers, who was on guard duty in the federal section of the Columbus City Jail, to help him escape. There was sharp controversy over admissibility of the evidence. Koenig had testified that the policeman had told him that he was getting a rough deal, to which Koenig had replied that he was being railroaded, in that he was to be put on trial on the escape charge without being tried on the bank robbery charge of which he was not guilty. He testified to the prison guard's telling him that he had been in prison more than a year and that he was being wronged. He repeated the officer's statement that if there were any way he could help he would be glad to do so. Whereupon, the defendant stated his reply to be: 'Well, I would like to go home.' The officer responded to inquire again if there were any way in which he could help.
 
 
 27
 The witness was asked whether any mention was made of a key to the door, or to hack-saw blades. He answered: 'No, not at that time.' He was then asked, 'At any time?'
 
 
 28
 Attorney Matan objected and was overruled, and the defendant said: 'If you want the whole story I will give it to you.' The prisoner queried as to whether he could ask the court a question, to which the judge responded that he might. Te defendant then asked if, by so testifying, he would be placing himself in jeopardy of being indicted on another charge and, therefore, whether he would risk the violation of his constitutional right under the Fifth Amendment. The judge responded: 'Well, you are under oath. Do you understand the nature of the oath?' The defendant replied that he did. The judge then stated' 'You are sworn to tell the truth, the whole truth and nothing but the truth, and that is all you need to tell on this witness stand. The Court sees no incrimination at this time if you want to answer; that is, as to whether you did or didn't. However, you can refuse to answer if you want to. That is your privilege.'
 
 
 29
 The defendant stated: 'I refuse to answer.'
 
 
 30
 The Court announced that the defendant refused to answer the question on the grounds that it might incriminate him. Attorney Matan moved to strike the entire testimony and the judge overruled and denied the motion. Attorney Matan interlarded, 'the conversation with Mr. Feathers, if any.'
 
 
 31
 The judge then said: 'We don't want a speech from you. Your motion is denied.'
 
 
 32
 The lawyer tried to explain: 'Your Honor, I just want the reason in the record.'
 
 
 33
 Because of the instances recorded herein, and others in the record not here recorded, we are impelled to the conclusion that the conduct of the United States District Judge was such as to deny the appellants a fair trial.
 
 
 34
 Accordingly, the judgments are reversed and the causes remanded for new trials.