**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Henry F. BELL, Defendant-Appellant.**

**Nos. 15968, 16231.**

United States Court of Appeals
Sixth Circuit.

Oct. 14, 1965.

---

William J. Harte, Chicago, Ill., and C. Allen High, Nashville, Tenn. (Edward B. Henslee, Jr., Francis H. Monek, Chicago, Ill., on the brief), for appellant.

Daniel H. Benson, Atty., Dept. of Justice, Washington, D. C. (Herbert J. Miller, Jr., Asst. Atty. Gen., Robert S. Erdahl, Beatrice Rosenberg, Attys., Dept. of Justice, Washington D. C., James F. Neal, U. S. Atty., Nashville, Tenn., on the brief), for appellee.

Before PHILLIPS and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This cause is on appeal from a judgment of conviction in the United States District Court for the Middle District of Tennessee. Henry F. Bell, defendant-appellant, referred to herein as defendant, was found guilty by a jury on the third count of a three-count indictment. Count three [1] charged that he corruptly

---

[1] "The Grand Jury further charges: That in or about the months of October and November 1962, in the Middle District of Tennessee, Nashville Division, HENRY F. BELL, the defendant herein, did unlawfully, knowingly, wilfully, and corruptly endeavor to influence, obstruct, and impede the due administration of justice in the trial of United States v. James R. Hoffa and Commercial Carriers, Inc. (Criminal No. 13241), in the United States District Court for the Middle District of Tennessee, Nashville Division, in that HENRY F. BELL did offer and promise to make available thirty thousand

endeavored to obstruct and impede the administration of justice in the trial of United States v. James R. Hoffa and Commercial Carriers, Inc., in the United States District Court for the Middle District of Tennessee, in violation of Section 1503,[2] Title 18, U.S.C. The defendant was sentenced to pay a fine of $5000 and to serve five years in prison.

The panel of prospective jurors for the Hoffa case mentioned in the third count of the indictment was selected on October 1, 1962, and the list was made public the next day. Trial of the case was begun on October 22nd and the jury was seated three days later. Gratin Fields and Mrs. Matthew Walker were members of that jury. The trial ended in a disagreement by the jurors. Judge William E. Miller, the trial judge, then ordered an investigation into charges of jury tampering and empaneled a special grand jury for that purpose. Judge Miller recused himself from further consideration of the matter and District Judge Frank Gray took over the supervision of the grand jury.

The substance of the charge in the third count of the indictment is that the defendant endeavored to induce Nathan Bellamy, a gambler and restaurant operator, to intercede with jurors Fields and Walker and to influence them to vote for the acquittal of Hoffa. It is alleged in the indictment that the defendant promised to make thirty thousand dollars available to Bellamy. The threshold question is whether there was sufficient testimony introduced by the government in support of the charge in the third count of the indictment to submit the case to the jury.

The sole direct testimony to support the charge was by witness Nathan Bellamy. The substance of this testimony was that in late October or early November, while the Hoffa trial was in progress, the defendant Bell came to see him at his restaurant, the Blackhawk Cafe. The visit lasted about twenty-five minutes, during which the defendant said he understood Bellamy was a gambler and knew how to keep his mouth shut and that it would be worth from five to thirty thousand dollars if he could "tamper" with jurors Fields and Walker and get them to vote for acquittal.[3]

dollars to Nathan Bellamy for the purpose of inducing Nathan Bellamy to communicate with, and to cause others to communicate with, Gratin Fields and Mrs. Matthew Walker, who, as the defendant then and there well knew, were serving as petit jurors in the said trial, and to influence the said petit jurors to vote for the acquittal of James R. Hoffa in the said trial." (Title 18, United States Code, Section 1503.) (Count one was dismissed and the defendant was acquitted on Count two.)

2. "Whoever corruptly, * * * by any * * * communication, endeavors to influence, intimidate, or impede any * * * petit juror, * * * in * * * any court of the United States, * * * in the discharge of his duty, * * * or corruptly * * * by * * * any * * * communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

3. "Q. And you met Mr. Bellamy—, or you met Mr. Bell in the Blackhawk Cafe?
"A. Yes, sir.
"Q. Would you tell us, Mr. Bellamy, what transpired between you and Mr. Bell at that time?
"A. Well, he asked did I know Mr. Fields and Mrs. Walker and I told him I didn't and he told me it was worth a whole lot of money if I could tamper with them to get them to vote for acquittal.
"Q. Did he specify any figure, Mr. Bellamy?
"A. Well, he said he'd go from five to thirty thousand.
"Q. And did you—, you knew that this Mrs. Walker and Mr. Fields, did you know they were serving on the 1962 Hoffa jury case?
"A. Yes, sir.
"Q. And that case was in progress at this time?
"A. Yes, sir.
"Q. Did Mr. Bell have anything to say about Mr. Hoffa?
"A. Oh, yes, sir. He—, he said he was a Negro's friend and that the trial would

The testimony of Mr. Bellamy that the defendant came to see him in the Blackhawk Cafe was corroborated by June Ford, a waitress in the restaurant. Mrs. Ford testified that on the morning of the alleged visit of the defendant to the Blackhawk Cafe she answered the telephone and called Mr. Bellamy to the telephone. At the conclusion of this conversation, Mr. Bellamy told Mrs. Ford that a big white guy was coming over to see him and to call him when he came. Mrs. Ford identified the defendant as being the one who later came to see Mr. Bellamy.

■ Mr. Bellamy was a gambler, engaged in the numbers business or "numbers racket" as it is commonly called. His testimony and that of Mrs. Ford is permeated with a recognition of this business and its illegality. His reliability as a witness might be subject to question but the government must take its witnesses where it finds them. This business of Bellamy as a gambler and law violator was thoroughly exploited on cross-examination. Mr. Bellamy's testimony, if believed, was sufficient to warrant the submission of the case to the jury. The defendant denied that he ever went to the Blackhawk Cafe and talked to Bellamy. This presented a question of fact for the jury to determine. The credibility of these two witnesses was a proper question for the jury to consider. We find no error on the part of the trial judge in denying the motion for a judgment of acquittal at the close of the government's case.

It is claimed that the court erred in permitting the witness June Ford to testify to a statement made by the witness Nathan Bellamy out of the presence of the defendant. Mrs. Ford testified that when the defendant left the Blackhawk Cafe, Mr. Bellamy followed him to the door and, immediately upon closing the door, he (Bellamy) told her that that man had offered him about $30,000 to tamper with the jury. The court allowed this statement to be admitted into evidence as a spontaneous utterance, which is an exception to the hearsay rule.

Professor Wigmore says there are three basic requirements which must be present before a hearsay statement may be admitted into evidence as a spontaneous exclamation: 1. There must be a startling event sufficient to shock the declarant placing him under stress of nervous excitement; 2. the exclamation must be made while the defendant is still possessed by this state of shock, that is, before he has time to reflect or fabricate; and 3. the exclamation must relate to the circumstances of the event which produced it. 6 Wigmore, Evidence, Section 1750 (3rd Ed. 1940). This rule known as the res gestae rule has been followed in a number of cases in this circuit.

In Fort Street Union Depot Co. v. Hillen, 119 F.2d 307, C.A.6, cert. den. 314 U.S. 642, 62 S.Ct. 82, 86 L.Ed. 515, two witnesses were permitted to testify that Hillen, the deceased, said at the scene of the accident that he had been riding the corner of a car and had been struck in the back or hip by the grabiron and got knocked off. The court said, 119 F.2d at p. 310,

"To be admissible it must appear that such statements were made under circumstances showing lack of opportunity for reflection. The time elapsing after the injury, the extent of the injuries, and all the circumstances bearing on spontaneity and lack of deliberation are factors to be considered."

---

go on until Christmas and that would be a nice Christmas present for the jury so they wouldn't have to be locked up for the holidays.
"Q. Did he use the term 'hang' at any time during the discussion?
"A. Yes, sir.
"Q. And in what sense did he use that?

"A. Well, he said it would only take one to hang the jury.
"Q. And what did you say to him when he made this offer to you, Mr. Bellamy?
"A. I told him I would see what I could do.
"Q. And did you try to do anything?
"A. No, sir."

The court said further, at p. 311,

"Much must be left to the sound discretion of the trial judge in rulings on admissibility of evidence of the instant character."

In Aetna Ins. Co. of Hartford, Conn., v. Licking Valley Milling Co., 19 F.2d 177, C.A.6, cert. den. 275 U.S. 541, 48 S.Ct. 37, 72 L.Ed. 415, the manager of the claimed insured was permitted to testify that one Bennett, after a telephone conversation with Stone, agent of the insurer, said that the insurance was in effect. See also, Tuckerman v. United States, 291 F. 958, C.A.6, cert. den. 263 U.S. 716, 44 S.Ct. 137, 68 L.Ed. 522; Overland Const. Co. v. Sydnor, 70 F.2d 338, C.A.6.

Cases cited by counsel for the defendant are not in point. In Brown v. United States, 80 U.S.App.D.C. 270, 152 F.2d 138, the testimony in question was a story that a three year old child told to her mother several hours after an alleged assault and her story to police officers a day or two after the alleged assault. In United States v. Mountain State Fabricating Company, 282 F.2d 263, C.A.4, the testimony in question was a retrospective recital of events concerning a fire which an unidentified person had told the witness who proffered the testimony.

 We conclude that the testimony of June Ford to which this assignment of error is addressed was admissible under the res gestae rule and that since the trial judge heard all of the circumstances in connection with it, he acted within his proper discretion in admitting it.

 It is claimed that the court erred in not permitting defense counsel to cross-examine Bellamy, for impeachment purposes, on a series of arrests and convictions involving the "numbers racket." The trial judge limited this type of cross-examination to convictions for felonies. The general rule and the rule followed in this circuit is that only such questions as show the commission of a felony or crimes involving moral turpitude are permitted. Henderson v. United States, 202 F.2d 400, 405, C.A.6; Smith v. United States, 283 F.2d 16, 22, C.A.6, cert. den. 365 U.S. 847, 81 S.Ct. 808, 5 L.Ed.2d 811. In Smith v. United States, we said it would not be proper to show a conviction for disorderly conduct.

 For the purpose of an offer of proof, the defense was permitted to cross-examine Bellamy out of the presence of the jury on the claimed convictions. One of these convictions was in the federal court which apparently was reversed by our Court. Seven of these alleged convictions were for vagrancy and loitering. Four of them were for operating a disorderly house[4] and one was for loitering around a disorderly house. Two others were for keeping a gaming house and for gaming. These offenses herein listed, we think, cannot be considered as involving moral turpitude. Five of the alleged convictions are for violating the state lottery law. On one of these the witness said: "Well, you put up a cash bond, you don't go back." This is not a conviction. Whether this applies to all of these cases was not made clear by defense counsel.

Following this proffer of evidence, the district judge permitted defense counsel to cross-examine Bellamy at length concerning his "business." He admitted that he knew he was violating state law and that he was doing it day in and day out and that he was actively engaged in the numbers business at the time the F.B.I. came to visit him. As we said previously, this subject was fully exploited by defense counsel and we find no error on the part of the trial judge in his rulings denying the right to cross-examine on these misdemeanors.

 Defense counsel objected to a question that was asked of the defendant on cross-examination for impeachment purposes. He was asked: "Mr. Bell, on February 13, 1945, were you convicted in New York on your plea of guilty to a

---

4. Bellamy testified without dispute that this charge referred to operating a numbers game.

charge of impersonating a police officer with intent to defraud another person of a sum of money?" He answered that he was, and on redirect-examination, he explained that he was put on probation and made restitution of $1500. The admissibility of this question was argued before the court in the absence of the jury before the defendant took the witness stand. The court ruled that the alleged crime was a misdemeanor involving moral turpitude and was admissible. He also ruled that the matter of time, the crime having occurred twenty years before, went to the weight of the testimony and not to its competence. This ruling was not in error.

By another assignment of error, the defense claims that the court should have dismissed the indictment because the defendant was subpoenaed as a witness before the grand jury, which returned the indictment against him. It is charged that he was questioned about matters for which he was later indicted; that the trial judge directed the defendant to answer questions which he had refused to answer before the grand jury; and that the trial judge failed to instruct the grand jury that no adverse inference was to arise from defendant's pleading his privilege against self-incrimination under the Fifth Amendment.

■■ We find no merit to this assignment of error. We do not find that the questions presented here were specifically raised by the defendant's motion to dismiss the indictment or that the trial judge ever passed on them, except possibly the one relating to the charge to the grand jury. The mere subpoenaing of the defendant before the grand jury is not per se a violation of his constitutional rights or a ground for dismissal of the indictment. The only questions that the trial judge required the defendant to answer were whether he understood certain questions propounded to him in the grand jury room. Counsel for the defendant cite no instance in their brief where the defendant was required to testify against himself or where he was prejudiced in any way by being subpoenaed before the grand jury. Counsel for the defense argue that the grand jury might have been prejudiced because the defendant stood on the Fifth Amendment and refused to answer questions. The inference is that the grand jury might not have indicted the defendant if it had been properly instructed concerning the defendant's right to take the Fifth Amendment. This claim is untenable. There was adequate direct evidence against the defendant to warrant the indictment. Since we have held the evidence was sufficient to take the case to the jury at the trial, it was obviously sufficient to justify the grand jury in returning an indictment.

■ We find no merit to the claimed error that the indictment should have been dismissed for the reason that it did not allege an offense and that it was so vague as to amount to a violation of the Sixth Amendment and Rule 7(c) of the Federal Rules of Criminal Procedure. The language of the indictment follows the wording of the statute [5] and is sufficient to "fairly apprise the defendant of the crime intended to be alleged, so as to enable him to prepare his defense and to make the judgment, whether of acquittal or conviction, a complete defense to a second prosecution for the same offense." Anderson et al. v. United States, 215 F.2d 84, 86, C.A.6, cert. den. Lewis v. United States, 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 698; See also Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240; United States v. Debrow, 346 U.S. 374, 377–378, 74 S.Ct. 113, 98 L.Ed. 92; Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314; Wright v. United States, 243 F.2d 546, C.A.6; United States v. Dickerson, 337 F.2d 343, C.A.6.

Counsel for the defendant charge that the trial judge erred in denying the motion of the defendant for an inspection of a transcript of the testimony before the grand jury. At the commencement of

5. See footnote 2.

the trial, counsel made a blanket motion for production of statements and reports of prospective government witnesses pursuant to the Jencks Act, (Section 3500, Title 18, U.S.C.) and for a transcript of the testimony of those witnesses who testified before the grand jury and whom the government intended to use at the trial. They made no further request during the progress of the trial based on a particularized need nor did they request the trial judge to make an in camera inspection of the transcript to see if there were any inconsistencies in the testimony of witnesses who testified both before the grand jury and at the trial.

Counsel were not entitled to a transcript of the grand jury testimony as a matter of right. They were only entitled to it when, within the discretion of the trial judge, a showing was made that the ends of justice required it. No such showing was made here. We think the most that counsel was entitled to was to request the trial judge to make an in camera inspection of the transcript and to turn over to them such part as might show an inconsistency in the testimony of a witness. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323; United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077. See also United States v. Keegan, 331 F.2d 257, C.A.7, cert. den. 379 U.S. 828, 85 S.Ct. 57, 13 L.Ed.2d 37; Berry v. United States, 295 F.2d 192, C.A.8, cert. den. 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388; United States v. Giampa, 290 F.2d 83, C.A.2. We find no error in the ruling of the trial judge on this motion.

Other assignments of error relate to the denial by the court of a motion on behalf of the defendant to transfer the case to another district or division for trial and the denial of a motion for a continuance. On July 22, 1963, a motion was filed on behalf of the defendant for a transfer to another district or division on the ground that there was so great a prejudice against the defendant in the Middle District of Tennessee that he could not have a fair trial in that district. (Rule 21(a) Federal Rules of Criminal Procedure.) This motion was supported by a brief of counsel for the defendant. The basis of this motion, as alleged in the brief, was that the adverse publicity raised by an unfavorable press, "fed by newsleaks" from the government, created a prejudicial setting for the trial so that the defendant could not have a fair trial. The trial judge denied this motion with other pretrial motions on October 7, 1963.

We find no evidence to support the claim that the government fed news releases to the press. By October 7th the unfavorable publicity of which the defense chiefly complains had not developed. The defendant's brief relative to the denial of this motion for a transfer argues the law of transfer rather than any specific reasons for claiming prejudice by reason of unfavorable publicity. Whether a transfer should be granted under Rule 21(a) is a matter of discretion with the trial judge. Hoffa v. Gray, 323 F.2d 178, C.A.6, cert. den. 375 U.S. 907, 84 S.Ct. 199, 11 L.Ed. 2d 147; Bearden v. United States, 320 F.2d 99, C.A.5, cert. den. 376 U.S. 922, 84 S.Ct. 679, 11 L.Ed.2d 616; United States v. Van Buskirk, 304 F.2d 871, C.A.6; United States v. Koenig, 300 F. 2d 377, C.A.6; Graham v. United States, 257 F.2d 724, C.A.6; Butzman v. United States, 205 F.2d 343, C.A.6, cert. den. 346 U.S. 828, 74 S.Ct. 50, 98 L.Ed. 353. We find no abuse of discretion on the part of the trial judge in denying the motion to transfer the case for trial to another district or division.

We turn now to the motion for a continuance which was filed March 31, 1964, on the eve of trial. The reason behind making this motion was that there had been so much unfavorable publicity in Nashville, arising out of the Hoffa trial in Chattanooga, that the defendant could not expect to be tried before a jury free from the prejudicial influence of that publicity. This motion was denied on Saturday, April 4th, and the trial began

on Monday, April 6th, in accordance with a previous assignment.

As heretofore indicated, the subject of the charge against the defendant was the endeavor to influence jurors in the trial of United States v. James R. Hoffa and Commercial Carriers, Inc., which was conducted in Nashville in October and November of 1962. The subsequent investigation of jury tampering in that case led to the return of several indictments by a special grand jury in the United States District Court for the Middle District of Tennessee. These included the indictment against the defendant herein, one against Hoffa and four co-defendants, and one against Cole and other co-defendants. At the request of Lawrence Medlin, his case was severed from the Hoffa case and by not moving for a transfer he elected to be tried in Nashville.

Judge Gray of the Middle District of Tennessee, by reason of certain developments occurring in November, 1963, recused himself from trying the Hoffa case. Judge Wilson of Chattanooga, Eastern District of Tennessee, was designated to hear the case and upon motion of the defendants transferred the case to Chattanooga on December 28, 1963. This trial began in Chattanooga in the middle of January, 1964, and was concluded on March 4th following. The defendants were all found guilty by a jury and were sentenced a few days later. Medlin's trial began in Nashville on March 30, 1964 and was concluded on April 3rd following. He was also found guilty.

As counsel for the defense say, "The problem of balancing the right of a defendant to a fair trial and the freedom of the press to comment on matters of public interest has continuously plagued the courts." It was evident from the outset that the Hoffa trial would become a cause celebre not only from the national prominence of Mr. Hoffa but because of the subject matter of the charges. It was natural that the newspapers would report the daily progress of this trial which lasted more than six weeks. The newspaper coverage was more than a matter of local interest. Our attention is called, in Appendix A of defendant's brief, to some fifty-one articles reporting the progress of the trial of Hoffa et al. in Chattanooga, that appeared in the two Nashville papers between February 1, 1964 and April 4, 1964.

Only six of these articles referred to the defendant Bell. Three of these indicated that the defendant's trial was coming up. In an article on the Hoffa trial, under date of February 7th, it was stated that the defendant's trial was set for April 6th under the caption "Union Official faces Bribery Trial in April." On March 10th, in an article entitled "6 Still to Face Jury Tamper Trial," defendant's case was listed as the first "of the remaining six." In an article under date of March 22nd, it was stated "Billie Sol Prosecutor Here to Try Case Against Bell," under heading "Federal Beat: Another Jury Tampering Jury Charge." The article carried a photograph of the defendant with the caption "His Trial Coming Up." It is the usual practice for newspapers to carry announcements of the approaching trial dates in important cases, both criminal and civil. We do not think the defendant can expect to be immunized against such publicity.

Two of the six articles referring to the defendant were announcements of procedures filed on behalf of the defendant in his own case. On February 22nd, on page two of the Tennessean, the headlines were "Judge Asked to Recuse Self." This had reference to defendant's "Petition for Change of Judge," filed on February 21, 1964. This article also stated that the case was set for April 6th. On April 2nd, on page four of the Banner, defendant's motion for a continuance was characterized as "Hearing Slated on Bell move to Stall Tamper." The defendant or his counsel could not expect that the filing of this petition and motion would go unnoticed by the newspapers.

Following the conviction of Hoffa and his co-defendants in Chattanooga, the Tennessean, on March 5th, carried an article entitled "Conviction Climaxes Charges Leveled Here." In this account of the conclusion of the trial, the defendant is named as one of twelve persons indicted. Taken out of context in this same article is a statement, quoting from a federal attorney in Chattanooga, "this is one of the greatest attacks on the jury system this country has ever known." In the same issue of the Tennessean, the central theme of an editorial was that the "integrity of the jury system" was on trial and the verdict "stands as a beacon with the warning that no one may try to thwart this principle with impunity."

This is the setting, complained of by defense counsel, in which the defendant went to trial. The complaint is not particularly about what was said concerning the defendant and his case but rather that he was identified and associated with Hoffa and was therefore contaminated by all of the publicity on the Hoffa trial. It is to be noted that the newspapers reported only the progress of the trial. They did not attempt to "try the cases in the newspapers," express an opinion of the guilt or innocence of any of the defendants or in any way carry on a campaign for a conviction of the defendants. The very substance of the offense charged in the third count of the indictment is that the defendant endeavored to influence two jurors in the Hoffa trial of 1962. It was for the benefit of Mr. Hoffa that he is charged with endeavoring to influence jurors. Under these circumstances, it is not apparent how he could be disassociated with Mr. Hoffa. At the minute he went on trial, the issue would be whether he was involved in the Hoffa trial of 1962. The defendant's case could not be tried in a vacuum. How long should the trial court have continued the case? One month? Three months? Six months? A year?

We cannot assume nor could the trial judge assume that all prospective jurors in the Nashville area would be so prejudiced by the publicity in the Hoffa trial that they could not fairly try the defendant. The mere recitation of this publicity did not per se give the defendant a right to a continuance or a change of venue. We conclude that the trial judge did not abuse his discretion in denying the motion for a continuance. See Dranow v. United States, 307 F.2d 545, C.A. 8; United States v. Decker, 304 F.2d 702, C.A. 6; United States v. Koenig, supra; Beck v. United States, 298 F.2d 622, C.A. 9, cert. den. 370 U. S. 919, 82 S.Ct. 1558, 8 L.Ed.2d 499; Delaney v. United States, 199 F.2d 107, C.A. 1.

Viewing the action of the trial judge in retrospect, it is apparent that he committed no error. Counsel for the defendant were given wide latitude in examining the prospective jurors on voir dire. None of the prospective jurors knew the defendant. Only one, Mr. Post, expressed a feeling of uncertainty as to whether he would be affected if it were brought out that the defendant was associated with Mr. Hoffa. He was peremptorily excused by counsel for defendant. While most of the jurors had read more or less of the Hoffa trial, they all stated under oath that they could decide the case on the evidence and the law as given to them by the trial judge. They all said that they could give the defendant the benefit of the presumption of innocence and acquit him unless his guilt was established beyond a reasonable doubt. None of them had any preconceived opinions as to the guilt or innocence of the defendant. It is significant that only one prospective juror was concerned with a possible association of the defendant with Mr. Hoffa. The defense used only six of the ten peremptory challenges it was allowed under the statute. Rule 24(b), Federal Rules of Criminal Procedure.

In another assignment of error it is charged that the trial judge erred in denying the defendant's petition for change of judge. It is claimed that the petition

is directed to Sections 144 and 455, Title 28, U.S.C.

While the petition and affidavit supporting it are signed by the defendant, they were obviously prepared by his counsel. We digress to say that the allegation in the petition that the trial judge "is incompetent to hear and try this cause" is in poor taste. The issue under Section 144 is prejudice of the judge, not his competence. This Court recognizes Judge Gray as a capable and competent judge.

▆▆ Section 455 [6] is inapplicable in this case. This section is primarily an admonition directed to the judge and "substantial interest" normally contemplates pecuniary or beneficial interest. There is no showing here or any specific charge that he has any interest in the case, that he has been counsel to anyone connected with the case, that he has been a material witness or that he is connected with any party or his attorney so as to render it improper for him to serve. See Adams v. United States, 302 F.2d 307, C.A. 5.

▆▆▆ The question under Section 144 [7] is whether the petition and affidavit meet the requirements of the statute for a change of judge. The district judge correctly stated the law. "If these allegations are sufficient to support the conclusion that the judge has a personal bias or prejudice against the defendant or in favor of the plaintiff, the judge must proceed no further whether he is actually prejudiced or not." It is the duty of the judge to pass on the sufficiency of the affidavit as a matter of law. See Mitchell v. United States, 126 F.2d 550, C.A. 10, cert. den. 316 U.S.

702, 62 S.Ct. 1307, 86 L.Ed. 1771; Green v. Murphy, 259 F.2d 591, C.A. 3; Simmons v. United States, 302 F.2d 71, C.A. 3; Willenbring v. United States, 306 F.2d 944, C.A. 9; Knapp v. Kinsey, 232 F.2d 458, C.A. 6, cert. den. 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86; Lyons v. United States, 325 F.2d 370, C.A. 9, cert. den. 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed. 2d 738; Coppedge v. United States, 114 U.S.App.D.C. 79, 311 F.2d 128, cert. den. 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701; United States v. Kravitz, 303 F.2d 700, C.A. 3, cert. den. 371 U.S. 922, 83 S.Ct. 290, 9 L.Ed.2d 231; Eisler v. United States, 83 U.S.App.D.C. 315, 170 F.2d 273, cert. den. 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542.

▆▆ The charges of bias and prejudice may be classified as follows: 1. A portion of the judge's charge to the grand jury which indicated that the judge had some general knowledge that the subject of jury tampering would be investigated by the grand jury; 2. A hearing, in which defendant was ordered to answer non-incriminating questions of the grand jury prior to his indictment; 3. The judge's hearing of evidence on pretrial motions in this case and three related cases and in disbarment proceedings in two other related matters; and 4. The judge's action in recusing himself from two related cases. Section 144 provides, in part, "The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, * * *" In Inland Freight Lines v. United States, 202 F.2d 169, 171, C.A. 10, the court said:

"To warrant disqualification of a judge, the affidavit must contain

---

6. "Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein."

7. "Whenever a party to any proceeding in a district court makes and files a timely

and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, * * *"

more than mere conclusions on the part of the pleader. Facts must be pleaded which show that there exists personal bias and prejudice on the part of the trial judge."

■ Upon examination of the petition and affidavit in this case, we find that the allegations are mere conclusions and generalizations. The petition and affidavit do not state the facts and reasons for the belief that bias or prejudice existed. The trial judge was not in error in ruling that the affidavit was insufficient as a matter of law.

■ One of the questions presented on this appeal relates to the method of selecting the grand jury and the legality of the grand jury that returned the indictments against the defendant and others, as stated on page fifteen herein. Counsel for the defendant and for the government refer the Court to the briefs in the cases of James R. Hoffa and co-defendants, being cases numbered 15876 to 15879 on the docket of this Court. These questions concerning the legality of the grand jury and the method of selecting it were decided adversely to the appellants in those cases on July 29, 1965 (349 F.2d 20). We follow the decision in those cases and hold that the grand jury was properly selected and legally empanelled.

On August 24, 1964, counsel for defendant filed a motion for new trial on the ground of newly discovered evidence. This motion was denied by the trial judge and counsel for defendant filed a notice of appeal. This appeal was docketed in this Court as No. 16231, United States of America, plaintiff-appellee, v. Henry F. Bell, defendant-appellant. By order of the Court, this appeal was consolidated for briefing and argument with No. 15968, United States of America, plaintiff-appellee, v. Henry F. Bell, defendant-appellant.

The alleged newly discovered evidence is that Mrs. Martha Roberts, one of the jurors on the trial of the defendant, did not disclose certain facts on the voir dire examination. Mrs. Roberts' husband, Esque Roberts, from whom she was separated, was subpoenaed to appear on January 31, 1963, before the grand jury which indicted the defendant. The defendant was subpoenaed to appear before the same grand jury on the following day. It is claimed that Mrs. Roberts knew that her husband had been subpoenaed before the grand jury and withheld this information on voir dire examination. It is further claimed that Mrs. Roberts was personally acquainted with Nathan Bellamy and that there was a relationship between them.

District Judge Gray conducted an oral hearing on this motion. In addition to the oral testimony, the judge had before him affidavits of Mrs. Roberts, Nathan Bellamy and attorneys for defendant C. Allen High and Edward B. Henslee, Jr. The burden of the affidavits of counsel was that Esque Roberts told them that his wife was personally acquainted with Nathan Bellamy and that there was a relationship between him and Mrs. Roberts. Esque Roberts was called to testify at the hearing by the court and both sides were given an opportunity to cross-examine him.

■ We have read the affidavits and the transcript of the testimony. We conclude that the defense failed to substantiate either claim of newly discovered evidence. We agree with the analysis of the evidence at this hearing as made by the trial judge.

"As to the first ground of the motion, the evidence clearly shows that Roberts was not a witness before the grand jury and had no knowledge of this case, and the preponderance of the evidence establishes that Mrs. Roberts had no knowledge that he had been questioned or subpoenaed as a witness with respect to the matters before the grand jury. It follows that there was no misconduct on the part of the juror in failing to disclose what she did not know and what would not have disqualified her as a juror if she had known.

"As to the second ground, the proof utterly fails to show even an

excuse for the making of the allegations against the juror. * * * Even if, somehow, the interview as represented to this court could provide a basis for the allegations of the affidavits, it is perfectly clear that there was no attempt to determine whether the allegations referred to the time prior to the trial. As lawyers, the defendants' counsel were fully aware of the importance of the time element, and its omission from the affidavits could hardly be inadvertent. Furthermore, the use of the word 'relationship' in reference to a man and a woman juror carries connotations that were unnecessary at least."

The motion for new trial was properly denied.

Judgment of the District Court is affirmed.