**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED APRIL 14, 2008

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                       No. 133128

DAVID CARL BARRETT,

        Defendant-Appellee.

BEFORE THE ENTIRE BENCH

TAYLOR, C. J.

At issue in this case is whether MRE 803(2),[1] the excited utterance exception to the hearsay rule, requires as a prerequisite to the admission of an out-of-court statement that a startling event or condition be established without considering the out-of-court statement itself. We conclude that the plain language

---

[1] MRE 803(2) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

of the rule, when applied as instructed by MRE 1101(b)(1)[2] and MRE 104(a),[3] allows the court to consider the statement along with other evidence to prove the existence of a startling event or condition. Accordingly, we overrule *People v Burton,* 433 Mich 268; 445 NW2d 133 (1989), to the extent that it held that the statement itself could not be considered along with the independent evidence to decide admissibility. This exclusion of any consideration of the statement was an incorrect understanding of the requirements of MRE 803(2). For this reason, we reverse the judgment of the Court of Appeals and the order of the trial court that relied on *Burton*, and we remand this case to the trial court for further proceedings consistent with this opinion.

---

[2] MRE 1101(b)(1) provides:

(b) Rules inapplicable. The rules [of evidence] other than those with respect to privileges do not apply in the following situations and proceedings:

(1) Preliminary Questions of Fact. The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104(a).

[3] MRE 104(a) provides:

Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the Rules of Evidence except those with respect to privileges.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

On May 17, 2004, Suzanne Bartel, defendant's longtime, live-in girlfriend, pounded on her neighbors' door, said that defendant was chasing her with an ax, and asked to use their phone. She was hysterical and crying. Her hysteria continued as she reported to the 911 operator that defendant had kicked the door in, beaten her, tried to strangle her, and brandished a hatchet. At one point, the 911 operator advised her to calm down and gain control of her breathing. Bartel informed the 911 operator that defendant had told her never to call the police or he would kill her.

When the first responding officer arrived, Bartel similarly told him that defendant had punched a hole in the bedroom door, pinned her to the bed, and began hitting her face; shortly afterward, defendant had picked up a hatchet, grabbed her around the neck, raised the hatchet, and said he was going to kill her. The officer observed that Bartel was so agitated that she could not sit down and that it was apparent that Bartel had been crying. When he and other officers searched Bartel's house, they found the hatchet in the house and a 12-inch hole in one of the doors. The officers observed marks on Bartel's shoulders and one arm and a cut on the inside of her mouth.

Defendant was charged with domestic assault (second offense) and felonious assault. At the preliminary examination, Bartel refused to testify. Faced with the prospect of a dismissal of the charges because of insufficient proofs, the prosecuting attorney attempted to have admitted, as excited utterances under the

3

hearsay[4] exception provided in MRE 803(2), the statements Bartel made to the 911 operator, one of the neighbors, and the police officer. The defense countered that *Burton* requires that the startling event be established by evidence solely apart from an excited utterance before the excited utterance can be admitted and that insufficient independent evidence had been offered in this case. The examining magistrate agreed with defendant that *Burton*'s requirements for independent evidence of the assault had not been met and thus dismissed the charges. The prosecution appealed in the circuit court, asserting that MRE 803(2), as written, does not require that the startling event be established only with evidence independent of the statement itself and that the *Burton* Court had unwarrantedly read the requirement into the rule. The circuit court affirmed on the basis of *Burton,* and the prosecution then sought leave to file an appeal in the Court of Appeals, again arguing that *Burton* had been wrongly decided. The Court of Appeals heard the case and concluded that, whatever the merits of the prosecution's argument, it had no authority to revise or alter in any fashion a decision of the Supreme Court.[5]

---

[4] A hearsay statement is an out-of-court statement made by someone other than a declarant at trial and offered in evidence to prove the truth of the matter asserted. MRE 801(c).

[5] *People v Barrett,* unpublished memorandum opinion of the Court of Appeals, issued December 19, 2006 (Docket No. 261382).

4

The prosecution sought leave to appeal in this Court, and we ordered oral argument on whether to grant the application and directed the parties to address whether *Burton* should be overruled. *People v Barrett,* 478 Mich 875 (2007).

## II. STANDARD OF REVIEW

Whether MRE 803(2) contains a requirement that the startling event or condition be established without consideration of the statement itself is a question of law, which is reviewed de novo. *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002) (stating that the meaning of a Michigan rule of evidence is examined in the same manner as a court rule or statute is examined: they all present questions of law that are reviewed de novo).

## III. ANALYSIS

Evidentiary rulings in Michigan courts are controlled by the Michigan Rules of Evidence, which this Court adopted in 1978. When we adopted the rules of evidence, they were closely patterned after the Federal Rules of Evidence, *People v Kreiner,* 415 Mich 372, 378; 329 NW2d 716 (1982), but we did not adopt all the federal rules verbatim. One that we adopted verbatim was MRE 803(2), the excited utterance rule at issue in this case. Both the federal and state versions of the rule state simply that, although hearsay, a statement will not be excluded by the hearsay rule if it is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Thus, while both rules require that there be a startling event or condition, they indisputably do not preclude consideration of the statement itself for the purpose of establishing the startling event or condition. Nevertheless, in 1989, the *Burton* Court, over the dissent of Justice Boyle and without invoking the rules-amendment process,[6] concluded that a proffered excited utterance could not be

---

[6] The amendment process, as outlined in MCR 1.201, provides:

(A) Notice of Proposed Amendment. Before amending the Michigan Court Rules or other sets of rules within its jurisdiction, the Supreme Court will notify the secretary of the State Bar of Michigan and the state court administrator of the proposed amendment, and the manner and date for submitting comments. The notice also will be posted on the Court's website, www.supremecourt.state.mi.us.

(B) Notice to Bar. The state bar secretary shall notify the appropriate state bar committees or sections of the proposed amendment, and the manner and date for submitting comments. Unless otherwise directed by the Court, the proposed amendment shall be published in the Michigan Bar Journal.

(C) Notice to Judges. The state court administrator shall notify the presidents of the Michigan Judges Association, the Michigan District Judges Association, and the Michigan Probate and Juvenile Court Judges Association of the proposed amendment, and the manner and date for submitting comments.

(D) Exceptions. The Court may modify or dispense with the notice requirements of this rule if it determines that there is a need for immediate action or if the proposed amendment would not significantly affect the delivery of justice.

(E) Administrative Public Hearings. The Court will conduct a public hearing pursuant to Supreme Court Administrative Order 1997-11 before acting on a proposed amendment that requires notice, unless there is a need for immediate action, in which event the amendment will be considered at a public hearing following

(continued…)

used to satisfy the conditions for its own admissibility. *Burton, supra* at 294. In reaching this conclusion, the *Burton* Court initially focused on the notion that there must be evidence independent of the statement itself to establish the existence of a startling event or condition before the statement could be admitted as an excited utterance.[7] We deal with a situation in this case for which there clearly was independent evidence to corroborate the existence of the startling event or condition.[8] Therefore, we do not need to reach the question whether the statement standing alone could supply the evidence of the startling event.[9]

_____

(…continued)
adoption. Public hearing agendas will be posted on the Court's website.

[7] The *Burton* Court relied on a passage in *Rogers v Saginaw-Bay City R Co,* 187 Mich 490, 494-495; 153 NW 784 (1915), in which the *Rogers* Court held that a decedent's statement could not be used to establish its own spontaneity because the statement had not yet been admitted. *Burton, supra* at 280-281. Because *Rogers* was decided before MRE 104(a) was adopted, and MRE 104(a) effectively superseded the *Rogers* decision, this Court's adoption of MRE 104(a) essentially rejected the reasoning in *Rogers*. Thus*,* the *Burton* Court's reliance on *Rogers* 11 years after the adoption of MRE 104(a) was in error.

[8] There was a plethora of independent evidence indicating that Bartel had been exposed to a startling event or condition, namely, the neighbor's testimony that Bartel pounded frantically on the neighbors' door, Bartel's panicked state when speaking to the 911 operator, the responding officer's observation that Bartel was so hysterical when he arrived that she could not sit down, the hatchet inside the house, the 12-inch hole in one of the doors, the marks on Bartel's shoulders and arm, and the cut inside her mouth.

[9] Concerning that question, the 1972 advisory committee's notes to FRE 803(2) indicated in relevant part that "[w]hether *proof of the startling event* may be made by the statement itself is largely an academic question, since in most cases there is present at least circumstantial evidence that something of a startling nature must have occurred." (Emphasis in original.)

7

Instead, we focus on *Burton*'s wholesale preclusion of the use of the statement to establish the existence of the startling event or condition. The *Burton* Court, without any citation to authority and, in fact, ignoring the significance of the other rules of evidence we have cited here, stated: "[T]he excited utterance must not be used to substantiate the event from which the utterance must be shown to have arisen. In order to guard against this 'bootstrapping,' we must determine whether the nonexcited-utterance evidence independently furnishes proof of the underlying event." *Burton, supra* at 295.

It is this unsupported notion that is the subject of controversy in the instant case, and it is with this notion that we take issue precisely because of the *Burton* Court's failure to recognize and follow established rules of evidence that had guided the prevailing practice of determining evidentiary admissibility for the 11 years preceding the *Burton* decision. Of particular importance in the context of excited utterances are MRE 1101(b)(1) and MRE 104(a). MRE 1101(b)(1) provides:

> (b) Rules inapplicable. The rules [of evidence] other than those with respect to privileges do not apply in the following situations and proceedings:

> (1) Preliminary Questions of Fact. The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104(a).

Clearly, the existence of a startling event or condition is a question of fact that a trial court must decide before it may admit a statement under MRE 803(2) as an excited utterance. Thus, MRE 1101(b)(1) directs the court to comply with

8

MRE 104(a) when deciding whether a startling event or condition exists. And

MRE 104(a), which, like MRE 803(2), is identical to its federal counterpart, FRE

104(a), provides:

> Questions of admissibility generally. *Preliminary questions concerning* the qualification of a person to be a witness, the existence of a privilege, or *the admissibility of evidence shall be determined by the court*, subject to the provisions of subdivision (b). *In making its determination it is not bound by the Rules of Evidence* except those with respect to privileges. [Emphasis added.]

Had the *Burton* Court read MRE 1101(b)(1) and MRE 104(a) together and

applied those rules to its interpretation of MRE 803(2), as it was constrained to do,

the Court would have come to the inescapable conclusion, as we do now, that a

trial court may consider *any* evidence regardless of that evidence's admissibility at

trial, as long as the evidence is not privileged, in determining whether the evidence

proffered for admission at trial is admissible. In the context of an excited

utterance, then, this means that even though an out-of-court statement may not be

admitted at trial without adequate indicia of reliability, i.e., the existence of a

startling event or condition, the trial court can consider the statement when

determining whether the indicia of reliability have been met, i.e., that the startling

event or condition has been established.

Although the *Burton* Court referred to MRE 104(a) when it stated that "a

trial judge ruling on the admissibility of evidence need not confine his review to

admissible evidence only" under this rule, *Burton, supra* at 295, the Court

inexplicably declined to allow the consideration of an excited utterance itself on

9

the ground that to do so would allow a hearsay statement to be lifted """"by its bootstraps to the level of competent evidence,"""" *id.* at 281-282, quoting *People v Vega,* 413 Mich 773, 780; 321 NW2d 675 (1982), quoting *Glasser v United States,* 315 US 60, 75; 62 S Ct 457; 86 L Ed 680 (1942), even though such a result was permissible under MRE 104(a).[10]

The problem with relying on *Vega,* which relied on *Glasser* for the proposition that an inadmissible statement may not bootstrap its way into admissibility, is that just as *Rogers v Saginaw-Bay City R Co,* 187 Mich 490; 153 NW 784 (1915), was decided before the Michigan Rules of Evidence were adopted, *Glasser* was decided before the Federal Rules of Evidence were adopted. And the adoption of these rules changed the process governing a trial court's admissibility determinations.

---

[10] The dissent acknowledges that "[t]he court [is] free under MRE 104(a) to consider other inadmissible evidence when deciding whether to admit a statement under MRE 803(2)," but states that the court may not consider the statement itself. *Post* at 7. However, the dissent does not explain why MRE 104(a) allows the court to consider any evidence, including inadmissible evidence, but not the statement sought to be admitted. Similarly, the dissent contends that "while MRE 104(a) provides that the court is not bound by the rules of evidence while making determinations concerning admissibility, MRE 104(a) does not permit the court to disregard the criteria for admissibility inherent in the rule of evidence under consideration." *Post* at 7. This statement makes no sense: MRE 104(a) provides that the court is *not* bound by the rules of evidence while making admissibility determinations, but the court *is* bound by MRE 803(2). Either the court is bound by the rules of evidence when making admissibility determinations or it is not. The dissent cannot have it both ways.

In *Bourjaily v United States,* 483 US 171, 178; 107 S Ct 2775; 97 L Ed 2d 144 (1987), the United States Supreme Court considered the continued viability of *Glasser*'s bootstrapping analysis in light of the enactment of the Federal Rules of Evidence and concluded that to the extent that *Glasser* was inconsistent with FRE 104, which is identical to MRE 104, *Glasser* was overruled. The Court specifically held that "a court, in making a preliminary factual determination under [FRE] 801(d)(2)(E), may examine the hearsay statements sought to be admitted." *Bourjaily, supra* at 181. In reaching this conclusion, the Court reasoned that FRE 104 on its face permits the trial court to "consider any evidence whatsoever, bound only by the rules of privilege." *Id.* at 178. Nevertheless, even though *Bourjaily* overruled the very same proposition that *Burton* relied on, and even though *Burton* was decided two years after *Bourjaily,* the *Burton* Court chose to follow overruled precedent rather than follow the guidance provided by the United States Supreme Court.[11]

---

[11] *Vega, Glasser,* and *Bourjaily* all involved the admission of a coconspirator's statement against a defendant. At the time *Bourjaily* was decided, FRE 801(d)(2)(E) did not provide, as MRE 801(d)(2)(E) did, that the conspiracy must be established with independent proof. In 1997, 10 years after the *Bourjaily* decision, FRE 801(d)(2)(E) was amended to provide that "[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein . . . ." According to the relevant portion of the 1997 advisory committee's notes,

> [FRE] 801(d)(2) has been amended in order to respond to three issues raised by [*Bourjaily*]. First, the amendment codifies the holding in *Bourjaily* by stating expressly that a court shall consider the contents of a coconspirator's statement in determining "the

(continued…)

Properly understood then, MRE 104(a) permits a trial court to consider any

evidence, unless it implicates a privilege, when making preliminary

determinations concerning the admissibility of proffered evidence, and MRE

803(2), when applied in accordance with MRE 104(a), does not premise the

admissibility of an excited utterance on the proponent's ability to establish the

(…continued)

    existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered." According to *Bourjaily*, [FRE] 104(a) requires these preliminary questions to be established by a preponderance of the evidence.

    Second, the amendment resolves an issue on which the Court has reserved decision. It provides that the contents of the declarant's statement do not alone suffice to establish a conspiracy in which the declarant and the defendant participated. The court must consider in addition the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the contents of the statement in making its determination as to each preliminary question. This amendment is in accordance with existing practice. Every court of appeals that has resolved this issue requires some evidence in addition to the contents of the statement. [Citations omitted.]

The dissent claims that "[t]he amendment . . . indicated a prevailing policy against allowing the type of bootstrapping that the majority's approach will permit in the context of MRE 803(2)." *Post* at 10. This is clearly incorrect, given that the amended version of FRE 801(d)(2) expressly states that "[t]he contents of the statement shall be considered . . . ." The dissent also suggests that we are permitting a statement to serve as the only proof of a startling event or condition. *Post* at 8. In doing so, the dissent asserts that "*Burton* provides a modest protection against admitting *unsupported* hearsay statements when there is *no other independent* evidence establishing that the underlying event occurred." *Post* at 13 (emphasis in the original). As explained on p 7 of this opinion, given the plethora of independent evidence in this case, "we do not need to reach the question whether the statement standing alone could supply the evidence of the startling event."

existence of a startling event or condition without considering the utterance itself. In the instant case, Bartel's statement to her neighbor that defendant was chasing her with an ax; her statements to the 911 operator that defendant had kicked the door down, beaten her, tried to strangle her, and threatened her with a hatchet; and her similar statements to the responding police officer, as corroborated by the neighbor's observation that Bartel was hysterical and crying, the transcript of the 911 call in which the operator advised Bartel to calm down and gain control of her breathing, the first responding officer's observation that Bartel was so agitated that she could not sit down and that she had been crying, the hatchet in the house, a 12-inch hole in one of the doors, the marks on her shoulders and arm, and the cut on the inside of her mouth, all support that hers were excited utterances pertaining to a startling event or condition. Thus, the out-of-court statements were admissible under the excited utterance exception to the rule against hearsay.

## IV. STARE DECISIS

In assessing whether to overrule a prior decision, we must consider whether the earlier decision was wrongly decided and whether overruling the decision would work an undue hardship because of reliance interests or expectations that have arisen. *Robinson v Detroit*, 462 Mich 439, 465-466; 613 NW2d 307 (2000). For the reasons previously discussed, we conclude that *Burton* was incorrectly decided. "As to the reliance interest, the Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's

13

expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Id.* at 466. The decision in *Burton* has not become so fundamental that overruling it will interfere with any legitimate reliance or expectation interests. "[T]o have reliance the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event." *Id.* at 467. The *Burton* Court's decision cannot be said to have caused people to alter their conduct in any way. Therefore, overruling *Burton* will create no "practical real-world dislocations."

## V.  CONCLUSION

The plain language of MRE 803(2), the excited utterance exception to the hearsay rule, does not require that a startling event or condition be established solely with evidence independent of an out-of-court statement before the out-of-court statement may be admitted. Rather, MRE 1101(b)(1) and MRE 104(a) instruct that when a trial court makes a determination under MRE 803(2) about the existence of a startling event or condition, the court may consider the out-of-court statement itself in concluding whether the startling event or condition has been established. Because *Burton* failed to consider MRE 1101(b)(1) and MRE 104(a) when interpreting MRE 803(2), it reached the wrong result and must be overruled with respect to this issue. Because the lower courts in this case relied on *Burton,* we reverse the judgment of the Court of Appeals and the order of the trial court,

and we remand this case to the trial court for further proceedings consistent with this opinion.

Reversed and remanded to the trial court.


Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v                                                                No. 133128

DAVID CARL BARRETT,

Defendant-Appellee.

_____

WEAVER, J. (*concurring*).

I concur in the result of the majority opinion for the reasons stated in part V of the opinion and for the reasons stated in Justice Boyle's dissent in *People v Burton*, 433 Mich 268, 305; 445 NW2d 133 (1989).

Elizabeth A. Weaver

# S T A T E  O F  M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                No. 133128

DAVID CARL BARRETT,

      Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

I respectfully dissent. I would not overrule *People v Burton*, 433 Mich 268; 445 NW2d 133 (1989), because it is a prudent decision that defends the integrity of the evidence we admit in our courts.

Overruling precedent is a grave measure that should occur only after serious consideration. Before this Court overrules a deliberately made decision, it should be convinced not only that the case was wrongly decided, but that overruling it will cause less injury than following it. *McEvoy v Sault Ste Marie*, 136 Mich 172, 178; 98 NW 1006 (1904). In deciding whether to overrule established precedent, this Court must examine whether (1) the earlier case was incorrectly decided, (2) the earlier case defies practical workability, (3) reliance interests would work an undue hardship if the earlier case were overruled, and (4) changes in the law or facts no longer justify the earlier decision. *Robinson v Detroit,* 462 Mich 439, 464-465; 613 NW2d 307 (2000). In light of these factors,

I am convinced that *Burton* should not be overruled. In particular, I believe that the first *Robinson* factor weighs strongly against overruling *Burton* and its rule that a startling event or condition must be established by independent proof before a statement emanating from the event or condition may be admitted under the excited utterance exception to the hearsay rule.

The Federal Rules of Evidence codified a number of exceptions to the hearsay rule that had been recognized at common law. The advisory committee's notes to FRE 803 described the rule as a synthesis of common-law hearsay exceptions, "with revision where modern developments and conditions are believed to make that course appropriate." In 1978, Michigan adopted the excited utterance exception to the hearsay rule, MRE 803(2), stating that it was identical with FRE 803(2). At the time we adopted the Michigan Rules of Evidence, whether MRE 803(2) and FRE 803(2) required independent proof of the startling event was an unsettled question. The advisory committee's notes to FRE 803(2) declined to resolve the issue "[w]hether proof of the startling event may be made by the statement itself," dismissing it as "largely an academic question . . . ."

Accordingly, when this issue arose in *Burton*, this Court was addressing an unsettled question of law that was a matter of first impression in Michigan.[1] We

---

[1] Because the issue was one of first impression in Michigan and the advisory committee's notes to the Federal Rules of Evidence indicated that courts had come to different conclusions, this Court was well within its authority to adopt the position that MRE 803(2) requires independent proof of the underlying startling event or condition. I disagree with the majority's assertion that this Court
(continued…)

2

stated that "the specific question in this case—whether [a proffered excited utterance] may establish the underlying startling event—has not been considered by Michigan courts . . . ." *Burton*, *supra* at 280. The *Burton* Court properly sought to effectuate the intent of the formulating body by applying a reasonable construction that promoted the purpose of the provision. In discerning the intent of the formulating body, we appropriately interpreted MRE 803(2) consistently with Michigan cases that had applied its common-law predecessor.

In particular, *Burton* consulted *Rogers v Saginaw-Bay City R Co*, 187 Mich 490; 153 NW 784 (1915), a case that predated the Michigan Rules of Evidence but addressed the common-law spontaneous exclamation exception to the hearsay rule, which was analogous to MRE 803(2). Statements were admissible under the spontaneous exclamation exception if they met three conditions:

> (1) that there is a startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must relate to the circumstances of the occurrence preceding it. [*Rogers, supra* at 494, citing 3 Wigmore, Evidence, § 1750 *et seq*.][2]

---

(…continued)
was required to invoke the amendment process rather than holding in *Burton* that MRE 803(2) required independent proof of the startling event or condition. The independent-proof requirement is consistent with the language of MRE 803(2) and was not a departure from previous Michigan law.

[2] These conditions are virtually identical to the criteria for admissibility of statements under MRE 803(2), which are derived from the text of the exception:

(continued…)

3

*Rogers* involved a wrongful-death action in which the decedent was allegedly injured by the negligent operation of a street car. *Rogers, supra* at 491. The only witness to the apparent incident was the decedent himself, so the case hinged on the admission of the decedent's statements to his son. The son witnessed his father limping home with a drawn face, so he asked his father what was the matter. *Id.* at 492. The son proffered testimony that the decedent told him that "'while he was in the act of alighting from the car one foot was on the running board and the other foot was nearly on the ground, and the car started and threw him to the pavement on his right hip.'" *Id.* at 492-493. The issue presented was whether the decedent's statement fit within the hearsay exception that permitted the admission of spontaneous exclamations. *Id.* at 493.

This Court held that the proffered statement failed to meet the second condition—that the statement must have been made before there has been time to contrive and misrepresent. *Rogers* asked, "[H]ow can the second condition be met without direct and independent evidence of the time of the startling occasion with reference to the making of the statement?" *Id.* at 494. In other words, the foundation of the spontaneous exclamation exception required independent

_____

(…continued)

> To come within the excited utterance exception to the hearsay rule, a statement must meet three criteria: (1) it must arise out of a startling occasion; (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circumstances of the startling occasion. [*People v Gee*, 406 Mich 279, 282; 278 NW2d 304 (1979) (citations omitted).]

4

evidence of the statement's temporal relationship to the event to show that the statement arose spontaneously from the event.

In rejecting the notion that a statement alone could establish its own spontaneity for the purpose of this hearsay exception, *Rogers* illustrates our historical prohibition of the admission of hearsay evidence and disinclination to permit the circular practice of relying solely on the content of the statement to establish its foundation for admissibility. Notably, *Rogers* actually required *independent proof* that the event and the statement were so closely related in time as to establish that the statement was a spontaneous reaction to the event. *Rogers* recognized that the independent-proof requirement was necessary to meet the foundational elements of the exception. The foundational elements of a hearsay exception ensure that admission of the statement would fulfill the fundamental rationale of the exception.

Using the same reasoning, *Burton* determined that the first and third conditions of the excited utterance exception—that a statement arises out of a startling event or condition and relates to the circumstances of the startling occasion—require proof independent of the content of the statement itself. Just as in *Rogers*, the independent-proof requirement in *Burton* ensures that the foundational elements of the exception are met and that admission of the statement furthers the underlying rationale of the exception.

The foundational elements of the excited utterance exception embody its underlying rationale—the reason why, although it is hearsay, a statement is

5

deemed trustworthy enough for admission. It is widely accepted that the "premise underlying the exception for excited utterances is that a person under the influence of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication. Thus, any utterance made under such circumstances will be spontaneous and trustworthy." 5 Weinstein, Federal Evidence (2d ed), § 803.04[1], pp 803-18.1 to 803-19. The excited utterance exception is based on the principle that hearsay statements are only sufficiently reliable when they are spontaneous reactions to a startling event or condition. But the exception does not encompass *any* statement arising from *any* startling occasion. Only a statement "*relating* to a startling event or condition" is admissible under the exception. MRE 803(2) (emphasis added). "The statement need not elucidate or explain the occurrence in order to qualify as an excited utterance. It must, however, relate to the event in some manner." 5 Weinstein, § 803.04[5], p 803-29. In addition, at the time the statement is made, the declarant must be "under the stress of excitement caused by *the* event or condition." MRE 803(2) (emphasis added). The excited utterance exception, therefore, specifically requires that the statement *related* to the startling event or condition and that the *same* event or condition to which the statement related caused the declarant's excitement. These two foundational elements are precisely why *Burton*'s independent-proof requirement is invoked. The proponent of the evidence must show that the statement satisfies the foundational elements of the excited utterance exception. If there is no independent evidence of the nature of the startling event

6

or condition, it is impossible to adequately prove that the statement related to the starting event or condition or to establish that the occasion caused the declarant's excitement.

The majority claims that *Burton*'s independent-proof requirement is inconsistent with MRE 104(a). I disagree. The independent-proof requirement can be applied along with MRE 104(a) because independently establishing the existence of the startling event or condition is fundamental to the elements of MRE 803(2). This Court determined in *Burton* that the independent-proof requirement is integral to the foundational elements of the exception; thus, the relevant preliminary factual question for purposes of determining admissibility is whether a statement arises out of and relates to a startling occasion for which there is independent evidence. As such, there is no inconsistency between the independent-proof requirement and the latitude that MRE 104(a) gives a trial court to consider inadmissible evidence in resolving preliminary questions concerning the admissibility of evidence. The court would still be free under MRE 104(a) to consider other inadmissible evidence when deciding whether to admit a statement under MRE 803(2); the content of the statement itself would be excluded only from the court's determination of whether independent proof of the startling event or condition exists. In sum, while MRE 104(a) provides that the court is not bound by the rules of evidence while making determinations concerning admissibility, MRE 104(a) does not permit the court to disregard the criteria for admissibility inherent in the rule of evidence under consideration.

The majority's approach elevates MRE 104(a) over the other rules of evidence by concluding that MRE 104(a) grants the court unfettered authority to consider *any* evidence, aside from privileged evidence, while ignoring that the foundational requirements of the rule under consideration can direct what evidence the court may consider in making determinations concerning admissibility. The majority accuses me of trying to "have it both ways" by asserting that the court is *not* bound by the rules of evidence while making admissibility determinations, but *is* bound by MRE 803(2). *Ante* at 10 n 10. But the majority fails to recognize that the fundamental duty that MRE 104(a) entails is *determining admissibility under the rules of evidence*. MRE 104(a) permits the court to consider inadmissible evidence in making determinations concerning admissibility, but it does not excuse the court from ensuring that, ultimately, the conditions for admissibility are met. In this case, the content of the statement is not excluded from consideration because it is inadmissible hearsay under the rules of evidence; it is excluded because independent proof of the startling event or condition is fundamentally required to establish admissibility under MRE 803(2).

The majority dismisses the suggestion that its opinion will permit a statement to bootstrap itself into admissibility by allowing the statement alone to establish a startling event or condition. Though declining to reach the question, the majority cannot conceal that the natural extension of its construction of MRE 104(a) and MRE 803(2) would allow such bootstrapping. The majority suggests that if this Court had interpreted MRE 104(a) and MRE 803(2) properly in *Burton*,

8

it would have followed *Bourjaily v United States*, 483 US 171; 107 S Ct 2775; 97 L Ed 2d 144 (1987), which held that the adoption of the Federal Rules of Evidence abrogated the prohibition against bootstrapping in the context of admissions by coconspirators. *Ante* at 11. Given that the majority opinion endorses applying *Bourjaily* to MRE 803(2), it is notable that both the majority and *Bourjaily* shy away from addressing the disturbing consequence of their rulings. The majority states that "we do not need to reach the question whether the statement standing alone could supply the evidence of the startling event." *Ante* at 7. Similarly, in *Bourjaily*, the United States Supreme Court concluded that a court may consider an alleged coconspirator's statements in determining whether the statements are admissible as a party admission under FRE 801(d)(2)(E). *Bourjaily, supra* at 178-179. However, the Court declined to resolve whether an alleged coconspirator's statements could, by themselves, satisfy the proponent's burden, stating that "[w]e need not decide in this case whether the courts below could have relied solely upon [the declarant's] hearsay statements to determine that a conspiracy had been established by a preponderance of the evidence." *Id*. at 181. Thus, the Court left open the issue whether some independent proof of the conspiracy was required.

But it is apparent from their reaction to *Bourjaily* that the United States Judicial Conference, the Court, and Congress understood that *Bourjaily*'s ruling would logically permit bootstrapping under FRE 801(d)(2)(E). Significantly, in response to *Bourjaily*, these bodies proposed and approved an amendment of FRE

9

801(d)(2)(E).[3]  The rule was amended to provide that the "contents of the statement shall be considered *but are not alone sufficient* to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered . . . ." (Emphasis added.)  The advisory committee's notes observed that the amendment accorded with existing practice, because every court of appeals that had addressed the issue required some evidence in addition to the contents of the statement.  The amendment of FRE 801(d)(2)(E) in response to *Bourjaily* reflected the recognition that *Bourjaily*'s reasoning—on which the majority's opinion relies—opened the door to bootstrapping; otherwise, it would not have been necessary to add an explicit protection against bootstrapping to FRE 801(d)(2).  The amendment also indicated a prevailing policy against allowing the type of bootstrapping that the majority's approach will permit in the context of MRE 803(2).

Moreover, the amendment makes clear that FRE 104(a) does not permit the court to overlook the foundational requirements of the particular rule of evidence under consideration.  In other words, if the foundational elements of a rule of evidence prohibit the court from relying on a particular piece of evidence, FRE 104(a) does not override the rule and grant the court authority to rely on the prohibited evidence.  Accordingly, there is no contradiction between MRE 104(a)

---

[3] The advisory committee's notes to the 1997 amendment of FRE 801(d)(2)(E) state: "Rule 801(d)(2) has been amended in order to respond to three issues raised by *Bourjaily v. United States*, 483 U.S. 171 (1987)."

10

and *Burton*'s independent-proof rule because MRE 803(2) fundamentally requires independent proof of the startling event or condition.

The majority's rule will undoubtedly permit the admission of statements under this exception that do not meet its criteria and, consequently, do not carry the inherent trustworthiness sought by the exception. Without independent evidence of the startling event or condition, there will be inadequate proof that the statement related to the startling event or condition and that the declarant's excitement was caused by the same event or condition referred to in the statement.

*Burton* illustrates the peril of operating without independent proof of the event, thereby neglecting these criteria. In *Burton*, a police officer encountered a woman "running down the street wearing a twisted dress and no shoes, looking over her shoulder as if someone might be pursuing her." *Burton*, *supra* at 272. The officer stopped and let her into his squad car, where she reported that she had been sexually assaulted by defendant Burton when she had gone with an acquaintance to Burton's house. *Id.* at 272-273. She stated that she had escaped by asking permission to use the bathroom, then using the opportunity to pull her dress on and run out of the house. *Id.* at 274. The woman's trial testimony provided an entirely different account of events. She testified that she had accompanied an acquaintance to Burton's house, where she expected to be paid for having sex with Burton. After she disrobed, she requested money from Burton, but he refused and accused her of having taken money from him. They got into a heated argument, prompting Burton to slap her. She got angry, cried,

11

and ran out, expecting Burton to come after her and try to talk to her. *Id.* She testified that she decided to tell the police that Burton had raped her in order to get back at him for having slapped her. *Id.* at 275. At trial, Burton objected to the admission of the woman's original statements to the police officer under the excited utterance exception. We held that the statements were inadmissible without independent proof that the purported startling event—a sexual assault—took place. *Id.* at 294. We found that the independent evidence—the woman's demeanor, physical condition, and appearance at the time of the statement; Burton's attempt to remove the woman's shoes and panties from his house; the discovery of the woman's brassiere in the house; and the testimony of the other eyewitness—only established at most a stressful event with sexual overtones. *Id.* at 297-298.

*Burton* provides an excellent illustration of the necessity of proving with independent evidence the existence of a startling event or condition. *Burton* presented two potentially startling events according to two different versions of facts: either a sexual assault or an act of prostitution turned assault. Either event could explain the declarant's demeanor, disarray, and presence at the defendant's home, but only one version of events supported the content of the declarant's statements. The concern addressed by *Burton* was not that a declarant might wholly invent a startling event and feign agitation; it was that a declarant who had been legitimately agitated by an event could make a statement reflecting an entirely different event. Without independent evidence of the underlying event,

12

the statement could not adequately prove two of the conditions for admissibility under the excited utterance exception: that the statement related to the event and that the declarant's excitement was caused by that very event. The declarant's agitation could have been caused by an actual startling event, but if the declarant's statement reflected a different startling event, the statement did not "relate to" the actual startling event, and thus failed a necessary condition of admissibility. Further, in such a case, the declarant's excitement would not have been caused by the same event that was reflected in the statement, which is also a condition for admissibility. It is rarely disputed that some kind of startling event or condition has occurred in cases like *Burton* and the instant case. Independent evidence of some startling event or condition will usually be apparent from the declarant's demeanor. But the criteria for the excited utterance exception demand more than just any startling occasion—they require that the statement had a certain relationship with the particular event or condition that caused the excitement. And given that the hearsay statement is presumptively unreliable before it meets the criteria, it cannot alone establish the other criteria.

In practice, *Burton* provides a modest protection against admitting *unsupported* hearsay statements when there is *no other independent evidence* establishing that the underlying event occurred. *Burton* bars admission only in the most extreme cases, when there is insufficient independent evidence of the underlying startling event or condition. In such cases, these proffered statements might be considered particularly valuable evidence, as they perhaps comprise the

13

only proof of a criminal act; but, for the same reason, they are the most dangerous evidence if they are allowed to supply their own foundation for admissibility. As a rule that guards against the admission of untrustworthy evidence in rare cases, *Burton* should not be overruled.

In sum, *Burton* was not wrongly decided. *Burton*'s independent-proof requirement is compelled by the plain language of MRE 803(2) and the rationale of the excited utterance exception. It was consistent with our treatment of the analogous common-law spontaneous exclamation exception to the hearsay rule. Moreover, the independent-proof requirement does not contradict MRE 104(a); it simply requires a court to abide by the foundational elements of MRE 803(2).

I believe that *Burton* should not be overruled given the strength of the first *Robinson* factor: *Burton* was not wrongly decided. To complete the *Robinson* analysis, *Burton*'s independent-proof requirement does not defy practical workability; it simply requires a trial court to make a specific evidentiary finding. Reliance interests do not appear to be significantly involved here, except inasmuch as overruling established precedent disrupts the certainty of the law. I would also argue that there has been no change in the law or facts that would vitiate *Burton*'s rule. It seems to me a squandering of resources to be rearguing the intricacies of a decision made nearly 20 years ago, a debate that excludes the original parties and nearly all the members of the Court at the time.

This case presented a direct challenge to *Burton* on facts similar to those in that case. The prosecution did not appeal on the ground that the district court's

14

evidentiary ruling was an abuse of discretion, but asked this Court to overrule *Burton*. Because I would not overrule *Burton*, I would affirm the judgment of the Court of Appeals.

Michael F. Cavanagh
Marilyn Kelly

15